**Cleveland J. STOCKTON and Dorothy Altman Stockton, Plaintiffs-Appellees,**

v.

**John A. ALTMAN, Defendant-Appellant, and**

**Eleanor Altman Curran, Defendant.**

No. 28686.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1970.

Rehearing Denied and Rehearing En Banc Denied Oct. 28, 1970.

James H. Morrison, F. D. V. de La Barre, New Orleans, La., James P. Ryan, Fischer, Wood, Burney & Nesbitt, Corpus Christi, Tex., for defendant-appellant.

Richard A. Hall, Branscomb, Gary, Thomasson & Hall, Corpus Christi, Tex., for plaintiffs-appellees.

Thos. H. Law, Stone, Tilley, Parker, Snakard Law & Brown, Fort Worth, Tex., for Eleanor Altman Curran.

Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a judgment in a Texas diversity action for a partnership accounting. The jury in the district court found that although a partnership between the parties had existed, there was no right to an accounting. Accordingly, the district court rendered judgment for the defendants. We affirm.

On May 22, 1967, Cleveland J. Stockton and his wife, Dorothy, instituted this suit against John A. Altman and Eleanor Altman Curran seeking a declaratory judgment that the Stocktons were not indebted to either Altman or Mrs. Curran as the result of any business previously conducted by them. After filing his answer, Altman filed a counter complaint wherein he alleged that in 1950 he, his stepfather, Mr. Stockton, and his mother, Mrs. Stockton, had entered into a partnership agreement involving the operation of two businesses, a wine brokerage company headquartered in New Orleans, Louisiana, and a stock investment company headquartered in Corpus Christi, Texas. Altman further alleged that his sister, Mrs. Curran, joined the partnership in 1951 and that it was dissolved by the Stocktons in April, 1961, when they filed with the federal government a final tax return for the partnership. In addition, Altman prayed for an accounting of all the partnership assets and requested that he be given judgment for his portion thereof. In reply the Stocktons specifically denied that a partnership had ever existed and set forth the defenses of settlement, accord and satisfaction, estoppel, limitations and laches, and waiver. In a supplemental pretrial order the parties were realigned, Altman assuming the stance of plaintiff and Mrs. Curran and the Stocktons assuming the status of defendants. The trial court then directed that the jury trial be limited to those issues relating to Altman's right to an accounting and provided that if Altman were successful the matter was to be referred to an auditor.[1]

In its verdict the jury, in answer to special interrogatories, found that a

[1] The interrogatories submitted to the jury are as follows:

Interrogatory No. 1

Do you find from a preponderance of the evidence that John Altman and the Stocktons formed a partnership in 1950 as the term "partnership" has been defined for you by the court, and that John Altman was to share 50% in the profits of both the wine business and

partnership had existed between the parties; that there had been a settlement of accounts between the parties in 1961; that Altman was estopped from claiming more than the wine business, which he had accepted as his net share of the partnership assets; and that Altman was barred by laches from asserting in 1967 a claim for an accounting. After the jury's verdict was received and filed but before entry of judgment Altman filed a request for findings of fact and conclusions of law, together with an affidavit recounting for the court the substance of an interview that Altman's counsel had with the jury foreman. On the basis of the affidavit Altman requested the court to interrogate the foreman in reference to the jury's answers to certain interrogatories. Both requests were denied. In addition, the court found that the issues tried to the jury were properly tried and that the jury verdict was binding. The judge stated, however, that if the verdict were not binding upon him he would find that no partnership existed. Furthermore, he indicated he would find the facts as found by the jury in their answers to Interrogatories Nos. 2, 3, 4, 5 and 6. After judgment was entered for the Stocktons, Altman filed a motion to amend findings and judgment and, alternatively, to grant a new trial. The motions were overruled.

the stock investments and be liable for 50% of the losses of each?

Answer: "Yes" or "No".

If you have answered Interrogatory No. 1 "Yes" then continue to answer the following additional interrogatories as instructed. If you have answered Interrogatory No. 1 "No", then you need answer no further interrogatories and your "No" answer to Interrogatory No. 1 shall constitute your entire verdict.

Interrogatory No. 2

Do you find from a preponderance of the evidence that in 1961 or thereafter, the Stocktons and John Altman expressly or impliedly agreed that as his share of the partnership, John Altman would thereafter keep and operate the wine business as his separate property and the Stocktons would keep the stocks?

Answer: "Yes" or "No".

Interrogatory No. 3

Do you find from a preponderance of the evidence that after April 30, 1961, John Altman's conduct, whether by act, word or silence, was reasonably calculated to and did lead the Stocktons to believe that he had accepted the wine business as his net share of the partnership and did not intend to make any further claims against them?

Answer: "Yes" or "No".

If you have answered the foregoing Interrogatory No. 3 "Yes", then answer Interrogatory No. 4. If you have answered Interrogatory No. 3 "No", then skip Interrogatory No. 4.

Interrogatory No. 4

Do you find from a preponderance of the evidence that John Altman would gain an advantage that he was not otherwise entitled to or that the Stocktons would suffer a detriment they would not otherwise suffer if John Altman were now allowed to change his position and to demand more than the wine business?

Answer: "Yes" or "No".

Interrogatory No. 5

Do you find from a preponderance of the evidence that the disagreement between the Stocktons and John Altman was settled in 1961 or 1962 by an express or implied agreement between them that Altman would take the wine business as his sole property and that the Stocktons would keep the corporate stock?

Answer: "Yes" or "No".

Interrogatory No. 6

Do you find from a preponderance of the evidence that John Altman waited for a longer period of time than a person of ordinary prudence would have waited before demanding an accounting and that events occurred during the period of the delay such that the Stocktons cannot be put back in the position they were in on April 30, 1961, without injustice to the Stocktons?

Answer: "Yes" or "No".

Interrogatory No. 7

Do you find from a preponderance of the evidence that after April 30, 1961, but before January 1, 1966, John Altman, with full knowledge of such claims as you may find he had to the assets other than the wine business intentionally gave up such claims?

Answer: "Yes" or "No".

The jury answered "Yes" to Interrogatories Nos. 1, 2, 3, 4, 5, and 6, and "No" to Interrogatory No. 7.

This appeal raises seven points. Appellant Altman contends (1) that the jury's answers to the special interrogatories were not binding upon the court but merely advisory; (2) that there is insufficient evidence to support the jury's answers to Interrogatories Nos. 2, 4, 5 and 6, as well as the verdict based upon those answers; (3) that the court erred in submitting Interrogatory No. 4 to the jury over his objections; (4) that the answers to Interrogatories Nos. 2 and 5 are in irreconcilable conflict with the answer to Interrogatory No. 7; (5) that the trial court erred in refusing to call the jury foreman into open court to explain the jury's answers to certain interrogatories; (6) that laches was not a proper defense; and (7) that the trial court's finding that no partnership was ever formed is clearly erroneous. We find no merit in appellant's first five points and thus find it unnecessary to reach his last two contentions.

## I.

Appellant first argues that the district court erred both in giving binding rather than advisory effect to the jury's answers to the interrogatories and in denying his request for findings of fact and conclusions of law. As grounds for this contention appellant asserts that the accounts between the parties are of so complicated a nature that only a court of equity can satisfactorily unravel them. The Supreme Court, however, has noted that "In view of the powers given to the District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone * * *" it will be a rare case in which a party can demonstrate that only a court of equity can unravel the accounts.[2] We disagree with appellant's assertion that this case falls into that extraordinary category. Admittedly, the case involves some difficult concepts. We think, however, the jury unquestionably was competent to unravel and answer those issues establishing the right of Altman to an accounting. Moreover, it was specifically provided that in the event the jury found Altman entitled to an accounting the matter would be referred to a master, who, under an appropriate order, would audit the records and accounts of the parties and file with the court a report describing the status of the accounts. We thus believe this case falls within the scope of jury competence and find that under the standards enunciated by the Supreme Court in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L. Ed.2d 988 (1959) and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), appellee was entitled to a jury trial as a matter of right.[3] Regardless of whether a jury trial was required as a matter of course, however, it was proper here because appellant consented to it. Rule 39(c), Fed.R. Civ.P., contemplates that in actions not triable of right by a jury, the court, with the consent of both parties, may order

2. "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres*, (Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988), the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law * * * the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them. In view of the power given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962).

3. *See also* Swofford v. B & W, Inc., 5th Cir. 1964, 336 F.2d 406, cert. denied 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965) and Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5th Cir. 1961, 294 F.2d 486.

a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.[4] The district court expressly found that this cause, with the knowledge and acquiescence of all parties, was placed upon the jury docket more than six months before the actual commencement of the trial. Both the pretrial order and the supplemental pretrial order contemplated a jury trial of the contested issues of fact, and at the pretrial hearing it was agreed that the case would be submitted to a jury upon special interrogatories. Indeed, the district court found that none of the parties suggested or intimated to the court at any time prior to the receipt of the jury verdict and the filing of a motion for judgment thereon that the jury verdict should be considered as merely advisory. Upon reviewing the record we find no error in the court's conclusions that appellant consented to a jury trial and that the verdict should be treated as binding.

## II.

Appellant next urges that the evidence is insufficient to support the jury's answers to Interrogatories Nos. 2, 4, 5, and 6 as well as the verdict based upon these answers. The question of sufficiency of the evidence, however, was not preserved by a proper motion. It is well settled, as we held in Delchamps, Inc. v. Borkin, 5th Cir. 1970, 429 F.2d 417, that in the absence of a motion for judgment notwithstanding the verdict made at trial, this Court cannot examine the evidence for sufficiency. *See* Parker v. American Oil Co., 5th Cir. 1964, 327 F.2d 987. Even if the question had been properly preserved for our review, we, nevertheless, would find no merit in appellant's contention. This Court in considering a sufficiency question is required to accept all evidence in favor of the

verdict as true and to give that evidence the benefit of all permissible inferences that help sustain the jury's decision. Lyle v. Bentley, 5th Cir. 1969, 406 F.2d 325; Southern Pacific Co. v. Jordan, 5th Cir. 1968, 395 F.2d 209; Employers Mutual Casualty Co. v. Mosqueda, 5th Cir. 1963, 317 F.2d 609. When these standards are applied to the case at bar it becomes quite apparent that there is indeed sufficient evidence to sustain the controverted answers and verdict.

## III.

Thirdly, appellant contends that Interrogatory No. 4 was improperly worded and asserts that it created prejudice, depriving him of a fair trial on the other interrogatories. We disagree. The interrogatory in question was phrased as follows: "Do you find from a preponderance of the evidence that John Altman would gain an advantage that he was not otherwise entitled to or that the Stocktons would suffer a detriment they would not otherwise suffer if John Altman were now allowed to change his position and to demand more than the wine business?" Appellant reasons that the interrogatory was prejudicial in two ways: (1) It implied that Altman had accepted and did claim the wine business as his own and thus advised the jury that it should answer Interrogatories Nos. 2 and 5 in the affirmative; and (2) it indicated to the jury that Altman was taking a basically unfair position in claiming all the wine business and at the same time wanting the appellees to share the stocks with him.

In making this contention appellant overlooks the posture of the case at the time the jury reached Interrogatory No. 4. Throughout the course of the trial Altman's position indicated he was asking for more than the wine busi-

---

4. Fed.R.Civ.P. 39(c) provides as follows:
    *Advisory Jury and Trial by Consent.*
    In all actions not triable of right by a jury the court upon motion or its own initiative may try any issue with an advisory jury or, except in actions against

the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

ness. Moreover, Interrogatory No. 4 was submitted to the jury conditioned upon an affirmative answer to Interrogatory No. 3, which inquired of the jury whether John Altman's conduct after April 30, 1961, was reasonably calculated to and did lead the Stocktons to believe that he had accepted the wine business as his net share of the partnership and did not intend to make any further claims against them. Not until they answered "yes" to that inquiry did the jury proceed to Interrogatory No. 4, wherein inquiry was directed to whether Altman would gain an unwarranted advantage or the Stocktons would sustain a detriment if Altman were now allowed to demand more than the wine business. Consequently, in view of Altman's position during the trial and the facts found by the jury before it considered Interrogatory No. 4, we believe the district court committed no prejudicial error in wording the interrogatory as it did.

## IV.

Appellant next argues that the answers to Interrogatories Nos. 2 and 5 irreconcilably conflict with the answer to Interrogatory No. 7. In answer to Interrogatory No. 2 the jury found that " * * * in 1961 or thereafter, the Stocktons and John Altman expressly or impliedly agreed that as his share of the partnership, John Altman would thereafter keep and operate the wine business as his separate property and the Stocktons would keep the stocks." In answer to Interrogatory No. 5, the jury found that " * * * the disagreement between the Stocktons and John Altman was settled in 1961 or 1962 by an express or implied agreement between them that Altman would take the wine business as his sole property and that the Stocktons would keep the corporate stocks." Interrogatory No. 7 was worded as follows: "Do you find from a preponderance of the evidence that after April 30, 1961 but before January 1, 1966 John Altman, with full knowledge of such claims as you may find he had to the assets other

than the wine business intentionally gave up such claims?"

In response to Interrogatory No. 7 the jury answered "no." Appellant construes this answer as a finding that Altman did not intentionally give up his claims to assets other than the wine business after April 30, 1960, but before January 1, 1966, and reasons that it conflicts with Interrogatories Nos. 2 and 5 because without such intention as the jury in Interrogatory No. 7 found not to exist, Altman could not have entered into a settlement (Interrogatory No. 2) or an agreement of accord and satisfaction (Interrogatory No. 5). We do not agree with appellant's construction of the answer. Rather, we believe any inconsistency in the controverted answers is more apparent than real.

██ We begin consideration of this issue with the proposition that this Court is duty bound to reconcile or harmonize answers to interrogatories if it can reasonably do so. Safeway Stores, Inc. v. Dial, 5th Cir., 311 F.2d 595, reh. den. 314 F.2d 33; McVey v. Phillips Petroleum Co., 5th Cir. 1961, 288 F.2d 53. Indeed, " * * * a search of one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Explicit in Interrogatory No. 7 is the question whether John Altman after April 30, 1960, and before January 1, 1966, had any claims to give up. If the jury concluded that he had no such claims, a conclusion for which there exists support in the record, a "no" answer to Interrogatory No. 7 not only would properly follow but also would not conflict with the answer to Interrogatory No. 2. That the jury in reality did reach the preceding conclusion is likely. From their answers to Interrogatories Nos. 2 and 5 it is apparent the jury believed that an express or implied settlement and agreement between the parties was consummated prior to April

30, 1961. Moreover, the jury found in answer to Interrogatory No. 3 that Altman's conduct after April 30, 1961, was calculated to and did lead the Stocktons to believe that he had accepted the wine business as his share of the partnership. In view of these findings the jury might very well have concluded that Altman, having expressly or impliedly agreed in or prior to April of 1961 that the Stocktons would keep the stocks and he the wine business as his share of the partnership assets, simply had no claims to give up after April 30, 1966. Examined in this light the answers appear untainted with conflict.

■ There likewise exists no irreconcilable conflict between the jury's answer to Interrogatories Nos. 5 and 7. In Interrogatory No. 5 inquiry is directed to whether the disagreement between the Stocktons and Altman was settled in 1961 or 1962 by an express or implied agreement between them that Altman would take the wine business as his sole property and the Stocktons would keep the corporate stock. If the jury believed that by the end of April, 1961 the express or implied agreement had been consummated, it is likely they would then have concluded Altman had nothing to give up after April 30, 1961. Accordingly, the proper answer to Interrogatory No. 7 would be "no." There may be other explanations for the jury's answers, but we believe it unnecessary to delve into them since the preceding analysis demonstrates that there exists no irreconcilable conflict.

## V.

■ Appellant also urges that the district court erred in refusing to call the jury foreman into open court to explain the conflict between the answers to Interrogatories Nos. 2 and 5 and the answer to Interrogatory No. 7. As authority for his request appellant cites Freid v. McGrath, 77 U.S.App.D.C. 385, 135 F.2d 833 (1943). We note, though, that the cited case involved a latent clerical error in recording the jury verdict. Neither party has suggested that the

jury in the instant case made a mistake in reducing its verdict to writing and we do not believe the case supports appellant's position. Moreover, the trial judge found no irreconcilable conflict and, consequently, saw no need to ask the jury to clear up the conflict. Since we have determined that any conflict in the answers is more apparent than real, we are unable to agree with appellant that the trial court abused its discretion in not granting his request.

In conclusion, we have found no clear error in the judgment below; rather, we are firmly of the opinion that it is correct.

Affirmed.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.