United States Court of Appeals,

Fifth Circuit.

No. 92-5047.

P & L CONTRACTORS, INC., Plaintiff-Counter-Defendant Appellee,

v.

AMERICAN NORIT COMPANY, INC., Defendant-Counterclaimant Appellant.

Oct. 27, 1993.

Appeal from the United States District Court for the Eastern District of Texas.

Before WIENER and EMILIO M. GARZA, Circuit Judges and LITTLE[*], District Judge.

LITTLE, District Judge:

P & L Contractors ("P & L") brought suit against American Norit Company ("American") alleging breach of contract and quantum meruit claims. American counterclaimed for breach of contract. Pursuant to Fed.R.Civ.P. 49(a), the district court submitted the case to the jury by means of special interrogatories. The jury duly returned its answers, and the district court entered judgment for P & L on its quantum meruit claim in the amount of $194,873.48, together with attorneys' fees, costs and interest. The district court denied all further relief to P & L and ordered that American take nothing on its counterclaim. On appeal, American contends, *inter alia,* that the district court's judgment is inconsistent with the jury's answers to interrogatories. We agree. For the reasons that follow, we REVERSE the decision of the district court as to the imposition of a money judgment against American and RENDER judgment accordingly.

I.

In October 1988, American began to solicit bids on a "mine haul road" project. In connection with the solicitation process, American prepared a brochure of project specifications and held an informational meeting for prospective bidders, which P & L attended. At the meeting, American indicated that the primary purpose of the project was to permit access to a new source of stripminable lignite at American's Marshall, Texas facility by 1 March 1989. American emphasized the importance

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

of completing this portion of the project on time, explaining that American's current mine was nearing total depletion. The deadline for bid submission was 25 October 1988.

P & L, through its president and sole stockholder William "Dub" Lee, submitted a bid of $491,500 for the mine haul road project on the morning of 25 October 1988. Later that day, American accepted P & L's bid, the lowest submitted. Before issuing a purchase order for the project, however, American's mine supervisor, William Mersino, conferred with Lee.

P & L had an ongoing business relationship with American. Lee had been a full-time employee of American's predecessor, Atlas Powder. Thus, Mersino knew that P & L was having financial difficulties. Mersino met with Lee to make sure Lee had not been overly optimistic in preparing P & L's bid. Lee allayed Mersino's fears and reassured Mersino that P & L could complete the project on time and for the bid price. Mersino, an experienced civil engineer, believed that Lee was "cutting it close" but also believed the project could be completed as promised. On 2 November 1988, American issued purchase order # 6094 to P & L for the mine haul road project.

On 9 November 1988, P & L moved its equipment on-site and began work. Site preparation progressed for about a month, and then the weather took a turn for the worse. Rainfall was significantly higher than normal that winter, and work on the mine haul road became ploddingly slow. Meanwhile, American's current lignite mine was being depleted more quickly than expected. By 21 January 1989, the situation became desperate. American's current mine was nearly depleted, and—due to the persistent rain—the mine haul road remained in the early stages of construction.

At this point, Mersino and John Allen, American's engineer in charge of the mine haul road project, ordered P & L to do "whatever necessary" to expedite access to the new mine. Allen located some dry construction material, or "fill,"[1] which P & L could substitute for the fill that had been identified in the project specifications but was now too wet to use. Mersino ordered P & L to dedicate two road "scrapers" to work exclusively on the mine haul road project, rather than splitting time with P & L's other projects. Lee informed Allen and Mersino that accomplishing these tasks

_____

[1]"Fill," in contractors' vernacular, is dirt that is used to raise the elevation of a designated area of land. It is sometimes "cut" from areas where the natural elevation is too high.

would entail additional expense, not contemplated in P & L's bid. Although the parties disagreed as to who should be responsible for the additional expense, P & L remained on the job and continued to submit invoices for materials and labor.

P & L ultimately constructed an access road to the new mine, and lignite hauling trucks began using the road on 17 April 1989. Because the road had been partially constructed with wet materials, however, it proved unsatisfactory and had to be reworked and stabilized. This resulted in an amended purchase order, issued 6 June 1989. Under the amended order, the grade and elevation of the road were changed, off-site construction material was substituted for the on-site material, and a synthetic stabilizing material was installed under the roadbed. American paid the increased costs associated with the amended purchase order.

From 16 December 1988 through 30 June 1989, P & L submitted six invoices for its work on the mine haul road project; American paid each invoice, less the 107 retainage allowed under the original contract.[2] All told, P & L received $274,924.24 for its work on the mine haul road. Nevertheless, P & L's finances continued to suffer. On 7 August 1989 P & L could no longer pay its insurance premiums and retired its employees. The mine haul road project was still unfinished. American paid independent contractors approximately $385,790 to complete the project as originally contemplated under purchase order # 6094.

In October 1989, P & L sent a statement of account to American, reflecting advances made

---

[2]The invoices and payment amounts were as follows:

| | Bill Date | Invoice | Payment (less107 retainage) |
|---|---|---|---|
| 1. | 16 Dec. 1988 | $ 64,961.50 | $ 58,465.35 |
| 2. | 27 Dec. 1988 | 22,900.00 | 20,610.00 |
| 3. | 1 Feb. 1989 | 33,092.96 | 29,783.66 |
| 4. | 20 Mar. 1989 | 56,605.00 | 50,944.50 |
| 5. | 12 Apr. 1989 | 90,041.00 | 81,036.90 |
| 6. | 30 June 1989 | 37,870.92 | 34,083.83 |
| | | $305,471.38 | $274,924.24 |

by American under the mine haul road project, offset by an invoice for other, unrelated work P & L performed for American. According to this statement, on 2 October 1989, American maintained a credit balance of—or, in the language of the statement, P & L "owed" American—$8,510.69. In spite of this, on 14 December 1989, P & L's counsel sent American a letter demanding payment of $223,006.01 for work performed on the mine haul road project. American refused to pay; P & L filed suit.

At trial, P & L alleged that statements made by Mersino and Allen on 21 January 1989 were, in effect, an anticipatory repudiation of American's obligations under the contract represented by purchase order # 6094. Consequently, P & L asserted two grounds for recovery. First, P & L alleged that up until 21 January 1989, P & L substantially performed its obligations under the contract and was therefore entitled to recover the contract price, less payments received and costs saved by reason of American's breach. Second, P & L alleged that it was entitled to recover under quantum meruit for the reasonable value of work it performed after 21 January 1989, less payments received after that date. American counterclaimed for damages it alleged it incurred as a result of P & L's failure to finish the mine haul road project as promised.

Pursuant to Fed.R.Civ.P. 49(a), the district court submitted the case to the jury by means of ten special interrogatories.[3] In response to these interrogatories, the jury found that: (i) P & L

---

[3]The interrogatories and the jury's answers were as follows:

### SPECIAL INTERROGATORY NO. 1

Did American Norit Company breach the contract with plaintiff?

A "breach of contract" is a non-performance of any contractual duty of immediate performance. A breach may be total or partial, and may take place by failure to perform acts promised, or by prevention or hindrance.

(Answer "Yes" or "No.")

ANSWER: YES

If you have answered Special Interrogatory No. 1 "yes," then answer the following interrogatory; otherwise, do not answer Special Interrogatory No. 2.

### SPECIAL INTERROGATORY NO. 2

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate P & L Contractors, Inc. for its damages, if any, that resulted from American Norit Company's failure to comply with the contract?

You are instructed that your answer to this interrogatory must be determined by the following method of calculation, and none other:

Calculate the total amount due P & L Contractors, Inc., under the contract, less the amount that was paid to P & L Contractors, Inc. under the contract, less the amount P & L Contractors, Inc. would have expended if it had completed performance of the contract.

Do not include any amount for interest on past damages, if any.

In answering, do not take into consideration the amount that may be due for extra work not called for under the contract nor the amount for any damages that American Norit Company may have sustained due to the lack of full and complete performance.

Answer in dollars and cents for damages, if any.

ANSWER: $0

SPECIAL INTERROGATORY NO. 3

Did P & L Contractors, Inc. perform compensable work for American Norit Company in addition to the job reflected by purchase order No. 006094?

You are instructed that one party performs compensable work if valuable services are rendered or materials furnished for another party who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work.

(Answer "Yes" or "No.")

ANSWER: YES

If you have answered Special Interrogatory No. 3 "yes," then answer the following; otherwise, do not answer Special Interrogatory No. 4.

SPECIAL INTERROGATORY NO. 4

What is the reasonable value of such compensable work in addition to the job reflected by purchase order No. 006094 at the time and place it was performed?

Answer in dollars and cents, if any.

ANSWER: $194,873.48

## SPECIAL INTERROGATORY NO. 5

Did P & L Contractors, Inc. substantially perform the contract with American Norit Company to build a haul road?

(Answer "Yes" or "No.")

ANSWER: YES

If you have answered Special Interrogatory No. 5 "no," then answer the following; otherwise, do not answer Special Interrogatory No. 6.

## SPECIAL INTERROGATORY NO. 6

Was P & L Contractors, Inc.'s failure to substantially perform the contract excused?

In answering this interrogatory, you are instructed that failure to comply by P & L Contractors, Inc. is excused if any of the following circumstances occurred:

1. Failure to comply by P & L Contractors, Inc. is excused by American Norit Company's previous failure to comply with a material obligation of the same contract.

2. Failure to comply by P & L Contractors, Inc. is excused if compliance is waived by American Norit Company.

> You are instructed that a waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

(Answer "Yes" or "No.")

ANSWER: N/A

If you have answered Special Interrogatory No. 6 "no," then answer the following; otherwise, do not answer Special Interrogatory No. 7.

## SPECIAL INTERROGATORY NO. 7

Do you find that American Norit Company sustained damages by reason of a failure on the part of P & L Contractors, Inc. to fully and completely perform the construction of the haul road?

(Answer "Yes" or "No.")

ANSWER: N/A

If you have answered Special Interrogatory No. 7 "yes," then answer the following; otherwise, do not answer Special Interrogatory No. 8.

substantially performed its duties under the contract represented by purchase order # 6094; (ii) American breached its duties under the contract, but P & L suffered no damages therefor; (iii) P & L performed compensable work in addition to that required under the contract in the amount of $194,873.48; and (iv) P & L was paid a reasonable value for the work it provided in construction of the mine haul road project. The district court entered judgment, ostensibly on the jury's findings, in favor of P & L for quantum meruit of $194,837.48.

## II.

On appeal, American first challenges the district court's construction of the jury's answers to interrogatories. American argues that the jury's "yes" answer to the interrogatory "Do you find that

---

### SPECIAL INTERROGATORY NO. 8

What amount of money, if any, do you find would be required to complete and remedy any defects due to P & L Contractor [sic], Inc.'s failure to complete the work required under the contract?

Answer in dollars and cents, if any.

ANSWER: <u>N/A</u>

### SPECIAL INTERROGATORY NO. 9

Do you find that P & L Contractors, Inc. was paid a reasonable value for the labor, work and materials it provided to American Norit Company in the construction of the haul road?

(Answer "Yes" or "No.")

ANSWER: <u>YES</u>

If you have answered Special Interrogatory No. 9 "no," then answer the following; otherwise, do not answer Special Interrogatory No. 10.

### SPECIAL INTERROGATORY NO. 10

What is the reasonable value of the labor, work and materials provided to American Norit Company at the time and place it was performed in the construction of the haul road?

Answer in dollars and cents, if any.

ANSWER: <u>$  </u>

[P & L] was paid a reasonable value for the labor, work and materials it provided ... in the construction of the haul road?" mandates judgment that P & L take nothing on its claims.

We begin consideration of this issue by noting that federal district courts are granted considerable latitude in interpreting special interrogatories. *Geosearch, Inc. v. Howell Petroleum Corp.,* 819 F.2d 521, 527 (5th Cir.1987). The district court is in the best position to analyze the jury's intentions and thus is charged, in the first instance, with the obligation of giving effect to those intentions in light of the surrounding circumstances. *McVey v. Phillips Petroleum Co.,* 288 F.2d 53, 59 (5th Cir.1961).

The district court's discretion is not limitless, however. Under the Seventh Amendment and Fed.R.Civ.P. 58(2), the district court is duty bound to enter judgment on the jury's answers if they are clear and consistent. *Robles v. Exxon Corp.,* 862 F.2d 1201, 1204 (5th Cir.1989); *see also* 6A James W. Moore et al., Moore's Federal Practice ¶ 58.04[3] at 58-42 (2d ed. 1984) ("By returning a special verdict the jury has found the facts and it then becomes the duty of the court to apply the law to those facts and render judgment." (footnote omitted)).

In granting judgment for P & L in the amount of $194,873.48, the district court apparently understood the jury's affirmative response to interrogatory nine—whether P & L had been fully compensated for its work—to mean P & L had been fully compensated for its work *under the contract.* Consistent with P & L's theory of the case, however, interrogatories one and two dealt with P & L's contract damages. Interrogatories nine and ten were utilized in order to aggregate the potentially overlapping claims for contract damages and quantum meruit, so that American would receive full credit for the payments it made.[4] It logically follows from the jury's affirmative response to interrogatory nine that the payments received by P & L represented the reasonable value of *all*

---

[4]Under P & L's theory that American anticipatorily breached the contract on 21 January 1989, P & L contended that work done and payments made before this date were under the contract, and work done and payments made after this date were outside the contract. Interrogatory two dealt with contract damages which were necessarily reduced by payments made on the contract. Interrogatory four dealt with quantum meruit recovery and thus did not consider any payments American made. Assuming the jury followed P & L's theory of the case, interrogatories nine and ten were then necessary to aggregate P & L's claims for offset with payments American made after 21 January 1989 (approximately $195,000).

work P & L provided—including work performed outside the contract. Under the district court's view, American was not given credit for payments it made after 21 January 1988, and interrogatory nine was merely a restatement of the interrogatories dealing with contract damages. This cannot have been intended.

As the district court's final judgment acknowledges, the facts underlying P & L's claims complicate the otherwise straightforward issues in this case. In such situations, it is the duty of the court and counsel to fashion special interrogatories which simplify the issues for resolution by the jury. Where the law recognizes alternative or overlapping theories of recovery, the court must properly condition the interrogatories to minimize the possibility of conflicting or overlapping verdicts. John R. Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338, 340 (1969). While it is evident that the district court achieved this goal in the present case, the process was undoubtedly taxing. Understandably weary from cutting a path through the trees, it appears that the district court lost sight of the forest. We reverse the district court's judgment respecting P & L's quantum meruit recovery.

### III.

American next contends that there was insufficient evidence presented at trial to sustain the jury's findings of American's anticipatory repudiation and P & L's substantial performance. We will consider these contentions seriatim.

In finding that American breached (anticipatorily repudiated) the contract represented by purchase order # 6094, the jury evidently concluded that American demanded performance of acts not required under the contract. The parties agree that on 21 January 1989 American's officers, Mersino and Allen, demanded that the mine haul road project be performed in an expedited fashion. The parties disagree, however, regarding whether American was demanding more than it was entitled under the contract. The evidence was contradictory.

American presented evidence that P & L was contractually obligated to dedicate two scrapers to the job and to utilize "fill" designated by Allen. P & L presented evidence in refutation. American contended that P & L had assumed the risk of rain delays and that, in ordering "expedited" access to

the new mine, it was simply prodding P & L to perform its obligations to the letter. P & L contended that American had assumed the risk of rain delays and that its efforts to adequately construct the mine haul road were hampered by American's early use of the road. In the end, the resolution of this issue was for the jury. *See Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969).

As American points out, however, even if American demanded more than it was due under the contract, such a demand does not alone constitute an anticipatory repudiation under Texas law. *Hooper v. Bell,* 210 S.W.2d 870, 874 (Tex.Civ.App.1948); *see also* 4 Arthur L. Corbin, Corbin on Contracts § 973 at 910-11 (Where two contracting parties differ as to the interpretation of a contract, one party's demand that the contract be performed in accordance with his own interpretation is not in and of itself an anticipatory repudiation). In order to constitute such a repudiation, the demand must be accompanied by a clear manifestation of intention not to perform in accordance with any other interpretation. *Id.*

Admittedly, the evidence of a manifestation of intention not to perform is weak. In considering a sufficiency question, however, this court is required to accept all evidence in favor of the verdict as true and to give that evidence the benefit of all permissible inferences that sustain the jury's decision. *Stockton v. Altman,* 432 F.2d 946, 950 (5th Cir.1970) (citations omitted). In this vein, Lee's testimony that he was repeatedly told, "they had to have access into their new pit ... so that they wouldn't lose their supply of lignite," when coupled with P & L's prior course of dealing with American, could have lead a reasonable jury to infer that failure to comply with American's demands would result in P & L's dismissal. While American's manifestations of intention were obviously less than pellucid, they are sufficiently clear to sustain the jury's findings on appeal. *See Stockton,* 432 F.2d at 950.

Finally, American contends that there was insufficient evidence to support the jury's finding that P & L had substantially performed its obligations under the contract. Once the jury found that American anticipatorily repudiated the mine haul road contract on 21 January 1989, however, the measure of substantial performance was P & L's conduct prior to 21 January. In that case, there was ample evidence to support the jury's finding. Although P & L had arguably fallen behind "schedule,"

there were no contract deadlines imposed for work performed prior to 1 March 1989, and there has been no contention that P & L's work prior to 21 January was substandard. Accordingly, this argument, as well as American's claim for damages for P & L's breach of contract, is without merit.

IV.

In determining that the district court erred in granting judgment on P & L's quantum meruit claim in the amount of $194,873.48 and concluding that P & L should take nothing on this claim, we must also conclude that P & L is no longer entitled to recover attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code. *See Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 551 (Tex.Ct.App.1991).

The judgment of the district court is REVERSED as to P & L's recovery for quantum meruit. Judgment is RENDERED that P & L take nothing on its quantum meruit claim, and accordingly, is not entitled to recover attorneys' fees, costs, or interest. The judgment of the district court is, in all other respects, AFFIRMED.

_____  _____

_____