**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-30342

_____

DIANE CARR,                                                          Plaintiff-Appellant,

versus

WAL-MART STORES INC; ET AL

                                                                        Defendants,

WAL-MART STORES, INC.,

                                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

November 14, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The opinion of the court issued on September 12, 2002, 304 F.3d 507, is withdrawn and the following is substituted.

DIANE Carr ("Carr") appeals the trial court's denial of her motion for new trial, following a jury verdict finding in favor of Wal-Mart Stores, Inc. ("Wal-Mart") on Carr's negligence claim. For the reasons stated herein, we affirm in part, reverse in part, and remand for a new trial.

FACTS AND PROCEDURAL BACKGROUND

On the morning of March 20, 1997, Carr was shopping at a Wal-Mart in Jenna, Louisiana. While walking along an aisle, she was struck on the left side of her head by two attached plastic trash containers, which had fallen from the top shelf. At the time of the accident, on an aisle immediately adjacent to the aisle where Carr was struck, three Wal-Mart employees were installing a shelf on the center piece that divides the two aisles. One week after the accident, Carr sought treatment from her orthopedic surgeon, Robert Po ("Po"), complaining of injury to her right knee. After two months of treatment, she underwent total knee replacement surgery.

Thereafter, Carr brought an action against Wal-Mart for negligence, asserting that the falling containers exacerbated her pre-existing knee injury. The parties consented to a trial by jury conducted by a magistrate judge. At the conclusion of trial, the magistrate judge submitted a verdict form to the jury containing the following interrogatories:

1.    Do you find by a preponderance of the evidence that the defendant, Wal-Mart Stores, Inc. was negligent in causing the accident? YES___ NO__

      If your answer is "yes," proceed to question number 2. If your answer is "no," please sign the verdict form and return to the courtroom.

2.    Do you find that Wal-Mart Stores, Inc.'s negligence caused injury to [Carr]?   YES___ NO ____

Although the members of the jury answered "NO" to question No.1, they nonetheless went on to answer "NO" to question No.2 as well. When the jury returned the forms, the magistrate judge stated "obviously there's also an irregularity in that the jury answered question No.2 even though it should not have been answered, but that has caused no harm and *is not an inconsistent verdict*." Neither party objected to the court's determination. Following the judgment in favor of Wal-Mart, Carr

moved for a new trial, contending that the verdict was against the weight of the evidence. In her motion, Carr only challenged the jury's answer to interrogatory No.1. Carr contends that she only disputed the answer to question No.1 because she interpreted the magistrate judge's comment that the verdict was not inconsistent to mean that the answer to question No.2 flowed logically from the answer to question No.1, and thus, a successful challenge to the jury verdict on question No.1 would eliminate the basis for the jury's answer to question No.2.

In his ruling on Carr's motion, the magistrate judge stated that "[t]he direct and circumstantial evidence in the case was overwhelming that the Wal-Mart employee more probably than not was shaking the shelf and caused the [trash containers] to fall onto Ms. Carr's head." Thus, he concluded that "the jury verdict finding that Wal-Mart. . . was not negligent in causing the accident was contrary to the great weight of the evidence and [was] erroneous." Nonetheless, the magistrate judge determined that Carr was not entitled to a new trial. Specifically, he found that, "while the jury was not required, and in fact should not have answered [interrogatory No.2], the fact that it did answer it reflects its unanimous belief as to the proper response to the question." The judge stated that "[i]t is unnecessary to require a new trial in this case where it is obvious that the unanimous jury has considered the issues and has found the evidence as to causation lacking."

Carr filed a motion for reconsideration, arguing that the jury's response to interrogatory No.2 was compelled by its response to interrogatory No.1. The magistrate judge denied the motion, and this appeal follows.

## STANDARD OF REVIEW

In this circuit, it is well-settled that the "judge has a duty to attempt to reconcile a jury's apparently inconsistent responses to special interrogatories." United States v. $9,041,598.68 (Nine

3

Million Forty One Thousand Five Hundred Ninety Eight Dollars and Sixty Eight Cents), 163 F.3d 238, 249 (5th Cir. 1998). We grant considerable latitude to the trial court when interpreting special interrogatories since it is in a better position "to analyze the jury's intention[s] and thus is charged, in the first instance, with the obligation of giving effect to those intentions in light of the surrounding circumstances." Id. (citation omitted). Thus, this Court reviews a trial court's treatment of special interrogatories only for abuse of discretion. See P & L Contractors, Inc. v. Am. Norit Co., Inc., 5 F.3d 133, 138 (5th Cir. 1993).

"We will reverse the trial court's denial of a motion for new trial only when there is a clear showing of an abuse of discretion." Hiltgen v. Sumrall, 47 F.3d 695, 703 (5th Cir. 1995) (quoting Dawsey v. Olin Corp., 782 F.2d 1254, 1261 (5th Cir.1986)). A trial court "should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 269 (5th Cir. 1998) (internal quotation marks and citation omitted). "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right--and indeed the duty--to set the verdict aside and order a new trial." Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985) (citation omitted).

DISCUSSION

I.      Negligence claim

A merchant's duty to protect customers from injury caused by falling merchandise is set forth in Louisiana Revised Statute Annotated § 9.2800.6(A). The statute provides, in germane part, that

> A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

4

LA. REV. STAT. ANN. § 9.2800.6(A) (West 1997).

Louisiana courts have held that this duty "encompasses the responsibility on the part of store employees to place the merchandise safely on the shelf in such a manner that the merchandise will not fall." Mannina v. Wal-Mart Stores, Inc., 757 So. 2d 98, 102 (La. App. 2000) (citation omitted). In order to prevail in a "falling merchandise" case against Wal-Mart, Carr was required to prove: (1) she did not cause the merchandise to fall; (2) another customer in the aisle at the time the accident occurred did not cause the merchandise to fall; and (3) the merchant's negligence was the cause of the accident. Carr must have shown that "either a store employee or another customer placed the merchandise in an unsafe position on the shelf or otherwise caused the merchandise to be in such a precarious position that eventually, it [fell]." Davis v. Wal-Mart Stores, Inc., 774 So. 2d 84, 90 (La. 2000). An "unreasonably dangerous" condition on Wal-Mart's premises is shown only if Carr has negated the first two possibilities and demonstrated the last. Id. (citing Smith v. Toys ""R"" Us, Inc., 754 So. 2d 209, 212 (La. 1999)).

In Smith, the plaintiff was alone in an aisle when a large toy fell from the top shelf. She sustained wrist injuries and, as a result, she brought a falling merchandise cause of action against the merchant. 754 So. 2d at 210-11. Applying the three elements necessary to sustain a falling merchandise claim, and relying solely on the plaintiff's testimony, the district court found that the plaintiff demonstrated that her injuries were caused by the negligence of the merchant, even in absence of a direct explanation as to why the merchandise fell.[1] Id. at 215.

---

[1]The magistrate judge improperly concluded that Smith was inapplicable to the present case because "there was no evidence of a premise hazard" or that anything was wrong with the shelf or the store itself. Instead, he applied the "traditional negligence analysis" set forth in Littleton v. Wal-Mart Stores, Inc., 747 So. 2d 701 (La. App. 1999). Under this analysis, in order to recover on an action against a merchant, the customer who is injured from falling merchandise must show that

5

In its memorandum ruling, the magistrate judge found that the jury's "No" response to interrogatory No.1 was against the weight of the evidence. Specifically, he found that "[w]hile the employee did not directly push the merchandise over onto [Carr] . . . the direct and circumstantial evidence in [this] case is overwhelming that the Wal-Mart employee more probably than not . . . caused the garbage cans to fall onto Carr's head." We agree.

Applying <u>Smith</u> to the instant case demonstrates that the jury's verdict was erroneous. First, Wal-Mart has not presented any evidence refuting Carr's testimony that she did not cause the accident. Second, Carr testified that there were no other customers in the area at the time the accident occurred. Further, Jesse Berry ("Berry"), a Wal-Mart employee, who was installing the shelf around the time the accident occurred, testified that when he heard the trash containers fall, he ran to the aisle where Carr was struck, and did not see anyone other then Carr in the area. Lastly, the evidence clearly establishes that a Wal-Mart employee caused the containers to be in such a precarious position that they ultimately fell.

During trial, Berry admitted that the trash containers fell on Carr. In addition, at oral argument, Wal-Mart conceded that there is no dispute that the containers fell off the shelf and struck Carr. Furthermore, Berry testified that, although it is was possible that the installation of the shelf caused the containers to fall, he did not recall shaking the center piece while installing the shelf.

---

a "hazardous condition or defect existed, which caused injury." <u>Id.</u> at 703. It is well-settled that in diversity cases, a district court will "seek guidance by looking to the precedents established by intermediate state appellate courts" only when the state supreme court has not decided an issue. <u>Howe ex rel. Howe v. Scottsdale Ins. Co.</u>, 204 F.3d 624, 628 (5th Cir. 2000). Otherwise, "[it is] bound to apply the law as interpreted by the state's highest court." <u>Harken Exploration Co. v. Sphere Drake Ins. PLC</u>, 261 F.3d 466, 471 (5th Cir. 2001) (internal quotation marks and citations omitted). Because the Supreme Court of Louisiana has already decided the appropriate burden in "falling merchandise" cases, the magistrate judge incorrectly relied upon state appellate court case law.

However, Berry conceded that when the accident took place, he believed that the containers fell as a result of his installation of the shelf. Carr's trial counsel then asked Berry, "[o]ther than what you were doing, was there anything else happening that you could see or hear to that shelf that you could say, that's what caused the garbage can to fall"? Berry responded "[n]o, sir." In addition, Terry Knapp, a Wal-Mart assistant manager, who was supervising the installation on the shelf, stated that it was possible that Berry shook the shelf causing the garbage containers to fall and that he did not know whether the containers were secure on the shelf at the time Carr was struck.

The evidence presented at trial strongly indicates that Carr has proven the elements necessary to sustain a "falling merchandise" cause of action. Carr submitted evidence that (1) she did not cause the containers to fall, (2) there were no other customers in the area, and (3) a Wal-Mart employee caused the merchandise to be in an unstable position which resulted in it eventually falling. Further, Wal-Mart has not pointed to any concrete evidence contradicting Carr's assertions. Thus, the magistrate judge properly found that the jury's determination that Wal-Mart was not negligent in causing the accident was against the great weight of the evidence.

II. Inconsistent Jury Instructions

The Seventh Amendment "fashions [a] federal policy favoring jury decisions of disputed fact questions." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962) (internal quotation marks and citation omitted). Thus, the courts "must attempt to reconcile the jury's findings, by exegesis if necessary." Ellis v. Weasler Eng'g, Inc., 258 F.3d 326, 343 (5th Cir. 2001) (citing Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 119 (1963)). If the answers to the interrogatories seem to conflict, "[the court is] obligated to reconcile the answers, if possible, in order to validate the jury's verdict." White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987). When

7

reconciling conflicts, it must be determined whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." Id. (citation omitted).

In the instant case, the court so actively reconstructed the jury verdict so as to move beyond merely "validating the jury's verdict." After the jury rendered its verdict, the magistrate judge commented that "obviously there's . . . an irregularity in that the jury answered question No.2 even though it should not have been answered, but . . . has caused *no harm and is not an inconsistent verdict*." (emphasis added). However, in ruling on Carr's motion for new trial, the magistrate judge remarked that the jury answered "No" to interrogatory No.2 "apparently finding that any negligence of Wal-Mart did not cause injury to the plaintiff." The judge explained that "even though the jury's finding that Wal-Mart was not negligent [was] against the great weight of the evidence, the jury went on to find that any negligence of Wal-Mart did not cause injury to the plaintiff." Accordingly, the judge concluded that "it [was] unnecessary to require a new trial in this case where it is obvious that the unanimous jury has considered the issues and has found the evidence as to causation lacking." After the court made its ruling, Carr filed a motion for reconsideration. The magistrate judge denied the motion.

On appeal, Carr maintains, as she did in her motion for reconsideration, that in considering her motion for new trial, the trial court adopted an interpretation of the jury's verdict that created a literal inconsistency. Wal-Mart notes that the magistrate judge's "constitutional mandate to create consistency requires that we look beyond the face of the interrogatories to the court's instruction's as well." Alverez v. J. Ray McDermott & Co., Inc., 674 F.2d 1037, 1040 (5th Cir. 1982) (citation omitted). The instructions given by the magistrate judge provided, in relevant part:

Plaintiff bears the burden of proving both the existence of an injury and the cause and

8

effect relationship between the accident and the injury. You should answer this question by deciding whether Plaintiff would probably not have suffered the claimed injuries in the absence of the Defendant's conduct. If . . . Plaintiff probably would not have suffered the claimed injuries in the absence of Defendant's conduct then you must conclude Defendant's conduct did play a part in Plaintiff's injury and you may proceed to the next element.

Wal-Mart argues that these instructions made clear that the jury's obligation was to determine whether Carr's injuries were caused by Wal-Mart's conduct; that is, whether her injuries were caused by the accident. Thus, Wal-Mart maintains that it is probable that the jury's response to interrogatory No.2 was not merely a reiteration of its response to interrogatory No.1, but rather, a distinct finding that Carr's knee injury was not caused by the accident. Therefore, it asserts that the magistrate judge properly applied the jury's answer to interrogatory No.2 to give effect to the jury's ultimate conclusion that Wal-Mart did not cause Carr's injuries. We disagree.

Although we disagree with Wal-Mart's assertion, we acknowledge the "district court['s] wide discretion in deciding whether the jury's answers to the court's questions are clear." Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir. 1988); see White v. Grinfas, 809 F.2d 1157 (5th Cir. 1987). In accord with that discretion, there is a longstanding principle that a judge has a duty to harmonize inconsistent jury responses. See Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1962). In this case, however, the district court's findings fell outside of that wide scope of discretion as defined by our Circuit precedent.

In a case procedurally similar to this one, we addressed the effect that answers to interrogatories, given in violation of the court's expressed instructions, have on the verdict. See White, 809 F.2d 1157 (5th Cir. 1987). In White, the district court submitted nineteen interrogatories to the jury. Id. at 1161. The instructions following interrogatory No.3 stated "[i]f you have

9

answered 'we do not' to special interrogatory No.3, then do not answer any of the following special issues." Id. at 1162. The jury answered "No" to interrogatory No.3, but nonetheless, continued to answer the remaining interrogatories. Id. at 1161. On appeal, this Court held:

> Because all the questions subsequent to question 3 were predicated on an affirmative response to that question, the subsequent answers had to conflict with the answer to question 3, regardless of whether they were also in conflict with each other.
>
> ***
>
> To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict.

Id.

We find that White is persuasive in the instant case. Similar to the situation in White, the jury was instructed that "[i]f [its] answer [to interrogatory number 1] is 'yes,' proceed to [interrogatory] number 2. If your answer is 'no,' please sign the verdict form and return to the courtroom." The jury answered "NO" to interrogatory No.1, and proceeded to answer "NO" to interrogatory No.2 as well. Noting that there was an irregularity in the verdict in that the jury answered interrogatory No.2 in violation of the instructions given, the magistrate judge, nonetheless, accepted the jury's response to interrogatory No.1 as dispositive of the negligence issue, and determined that the jury's additional response to interrogatory No.2 was harmless. However, in ruling on Carr's motion for new trial, the trial court *sua sponte* adopted the jury's response to interrogatory No.2 and used it as a basis for denying Carr's motion. By concluding that the jury gave an erroneous answer to question No. 1 but that the same jury gave a reasoned answer to question No. 2 in violation of their charge, the judge did not "effectuate the best intent of the jury," consistent with White, but rather used the unnecessary

10

answer to impeach the foundation of Carr's motion for a new trial. The additional response to question No. 2 was hardly harmless.

The Supreme Court held in Gallick v. Baltimore & Ohio R. Co. that when the jury answers interrogatories inconsistently, the judge has a duty under the Seventh Amendment to "harmonize" or "reconcile" them. 372 U.S. 108, 119 (1962). We have concluded that a district court does not abuse its discretion in reconciling verdicts containing answers to interrogatories that the jury was instructed not to answer, when it either disregards the superfluous answers in their entirety, or resubmits the interrogatories to the jury. See Richard, 853 F.2d at 1260; Knowlton v. Greenwood Independent School Dist., 957 F.2d 1172, 1179 (5th Cir. 1992); see also Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991) (holding that "special findings issued in violation of the trial court's express[ed] instructions do not constitute legitimate or viable findings of fact. The trial court must therefore dismiss them as surplusage, as a matter of law."); Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10 (1st Cir. 1991) (upholding a district court's decision to disregard interrogatories answered as a result of the jury's failure to comply with the court's written instructions).

Here, however, for the purposes of Carr's motion, the trial court actually gave effect to the jury's answer to interrogatory No.2, which, pursuant to White, necessarily conflicted with its response to interrogatory No.1. There is no dispute that the jury was instructed to answer question No. 1 but answered question No. 2 in violation of the jury instructions. Yet, the judge found that the jury response to question No. 1 was erroneous and that the response to question No. 2 was reasonable. In this context, the judge's findings do not "fairly ... represent a logical and probable decision on the relevant issues as submitted." White, 809 F.2d at 1161.

Furthermore, we are not persuaded by the trial court's conclusion that "[i]t is unnecessary to

11

require a new trial in this case where it is obvious that the unanimous jury has considered the issues and has found the evidence as to causation lacking." In the present case, the jury form instructed the jury to refrain from answering interrogatory No.2 if it found that Wal-Mart was not negligent under interrogatory No.1. In such a case, there is no way to tell whether the jury actually deliberated the causation question, or whether its answer to the causation question was logically compelled from its answer to the negligence question. The district court's determination that the jury actually deliberated the issue of causation amounts to nothing more than pure speculation. There were no notes from the jury concerning the instruction, nor any polling of the jury, which would shed light on this question. Thus, it appears that the magistrate judge decided the causation question according to his own assessment of the evidence, which is tantamount to a bench trial in violation of Carr's right under the Seventh Amendment to a trial by jury. The Federal Rules of Civil Procedure provide that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." FED R. CIV. P. 38(a). "Maintenance of the jury as a fact- finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Jennings v. McCormick, 154 F.3d 542, 545 (5th Cir. 1998) (citation omitted). Because it is questionable whether the jury actually deliberated the causation issue, and since the magistrate judge's acceptance of the jury's response to interrogatory No.2 conflicts with our decision in White, we conclude that the trial court abused its discretion in utilizing the jury's response to the causation interrogatory as grounds for denying Carr's motion for new trial. We, therefore, reverse the court's ruling.

CONCLUSION

12

For the reasons stated herein, we AFFIRM in part, REVERSE in part, and REMAND for a new trial.

AFFIRMED in part, REVERSED in part, and REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting:

This case requires us to determine whether the magistrate judge, who tried this "falling merchandise" case, abused his discretion when he gave effect to the jury's response to interrogatory No. 2 after determining that the jury's response to interrogatory No. 1 was "against the great weight of the evidence." More specifically, this case asks us to decide whether a trial court should disregard "unnecessary" jury responses[2] that are consistent with both the jury's verdict and the trial court's view of the evidence simply because one of the jury's answers was found to be "erroneous."[3] The majority concludes that the magistrate judge "did not 'effectuate the best intent of the jury'" as our precedent requires, and thus abused his wide scope of discretion. Maj. Op. at 10. Because I believe the majority misconstrues our precedent on this issue, I respectfully dissent.

The majority cites our opinion in *White v. Grinfas* to support its reasoning. 809 F.2d 1157 (5th Cir. 1987). In *White*, the jury was instructed that if it answered "No" to question 3 on the verdict form, it should not answer any of the remaining sixteen questions. Although the jury answered "No" to question 3, it failed to follow the court's instructions and went on to answer five more questions. Unfortunately, two of the jury's unnecessary answers were arguably inconsistent with one another. The losing party at trial then attempted to impeach the jury's otherwise clear verdict by relying on the potential inconsistency between the jury's unnecessary responses. On

[2]In my view, the jury's answer to interrogatory no. 2 was necessary. See *supra* at 3-4 (discussion of causation of accident versus causation of injury).

[3]The magistrate judge concluded that the jury's response to interrogatory No. 1 "was contrary to the great weight of the evidence and [was] erroneous." The majority makes much of the fact that the judge found the jury's answer to be "erroneous"; however, the magistrate judge's precise legal holding was that, in the judge's view, the jury's verdict was not supported by the evidence. For purposes of this dissent, I assume without deciding that the magistrate judge properly set aside the jury's answer as "against the great weight of the evidence."

14

appeal, we affirmed the trial court's entry of judgment based on the jury's dispositive finding on question 3. In doing so, we held that "if the [trial judge] has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions." *Id.*, 809 F.2d at 1161.

*White*, however, is the converse of this case. The majority reads *White* to mean that unnecessary jury answers cannot be used if the court has already found the jury's answer to a necessary interrogatory to be against the weight of the evidence. The specifics of *White* are not applicable to this case, however. Rather than stating a broad rule for interpreting irregular jury verdicts, *White* holds only the converse: that is, that a jury's unnecessary responses cannot be used to *impeach* that jury's otherwise clear verdict. *White*, 809 F.2d at 1161. *White* does not address the instant situation—where the jury's necessary response is clear but found to be unsupported by the evidence and the jury's "unnecessary" response is also clear, *supports* the jury's verdict, and, most importantly, does not conflict with the court's view of the evidence.

The error in the majority's analysis is evident when one considers the purpose of the *White* rule—"[t]o effectuate best the intent of the jury." *Id.* Although the majority recites this exact language, it seemingly fails to recognize that the Supreme Court has long since held that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd*, 369 U.S. 355, 364 (1962); *see also Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326 (5th Cir. 2001) ("We are required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts *if at all possible*.") (citing *Atlantic & Gulf Stevedores*, 369 U.S. at 364)

15

(emphasis added); *Richards v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988) ("Courts are obligated to reconcile a jury's answers when possible."). The principle guiding all of these cases is simple—where possible, we must interpret a jury's answers in such a way as to best fulfill the intent of the jury. To set aside a jury's clear resolution of disputed questions of fact because of a harmless irregularity in the way they answered special interrogatories would run afoul of the federal policy favoring jury verdicts set forth in the Seventh Amendment. *Atlantic & Gulf Stevedores*, 369 U.S. at 364 ("For to search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.").

Here, two issues were hotly contested before the jury—whether Wal-Mart's negligence caused the accident (i.e. the falling of the trash cans) and whether Wal-Mart's negligence caused the knee injury for which Carr sought damages. Both issues were submitted to the jury with no objection from the parties. The operative word in interrogatory No. 2 is the word "injury"—whether Wal-Mart's "negligence caused injury to [Carr]?" The jury said, "No," and there was ample evidence to support the jury's verdict. Neither party objected to question 2 and neither party objected to the jury's answer. The jury's decision to answer both questions did not, as the majority suggests, create an inconsistency requiring the magistrate judge to disregard the jury's answer to interrogatory No. 2.[4] When answering interrogatory No. 2, the jury made a finding separate and distinct from its finding

---

[4]As a justification for her failure to object to the irregularity of the jury's answers, Carr concedes that the jury's negative answers to interrogatories Nos. 1 and 2 were consistent with each other. Nonetheless, the majority concludes that the answers to interrogatories Nos. 1 and 2 were *necessarily* inconsistent based on our reasoning in *White*. In *White*, we stated that the jury's answers to five additional questions were inconsistent with the jury's negative response to question 3 because the subsequent questions were predicated on an affirmative response to questions 3. *White*, 809 F.2d at 1161 ("Because all the questions subsequent to question 3 were predicated on an affirmative response to that question, the subsequent answers had to conflict with the answer to question 3 .

16

on interrogatory No. 1. No matter whether Wal-Mart's negligence caused the accident, its negligence did not cause any exacerbation to Carr's pre-existing knee injury—so said the jury.[5]

In sum, I believe the magistrate judge acted within his sound discretion when he gave effect to the jury's response to interrogatory No. 2, even after he set aside the jury's answer to interrogatory No.1. Accordingly, I would affirm the magistrate judge's denial of Carr's motion for a new trial.

---

. . .”). Unlike the questions following the terminating question in *White*, however, interrogatory No. 2 does not necessarily presume an affirmative response to interrogatory No. 1.

[5]One reason why the majority refuses to give effect to the jury's answer to interrogatory No. 2 is its belief that "there is no way to tell whether the jury actually deliberated the causation question [regarding Carr's injury], or whether its answer to the causation question was logically compelled from its answer to the negligence question." Again, I believe the majority has overstepped its bounds. Specifically, the majority fails to accord the proper respect to the interpretation of the jury's answers given by the trial judge. It is the trial judge, and not the appellate court, "who has observed the jury during the trial [and] prepared the questions and explained them to the jury." *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988). As a result, it is the trial judge, and not the appellate court, who is in the best position to evaluate whether the jury's answers reflect confusion and uncertainty or a clear resolution of disputed fact issues.

17