700 So.2d 215 (1997)
Linda LOPEZ
v.
WAL-MART STORES, INC. and Pam Barr.
No. 94-CA-2059.
Court of Appeal of Louisiana, Fourth Circuit.
August 13, 1997.
Rehearing Denied September 15, 1997.
*216 Robert G. Harvey, Sr., Thomas Corrington, Tamara Kluger Jacobson, Harvey, Larzelere, Jacobson & Corrington, APLC, New Orleans, for Plaintiff/Appellant Linda Lopez.
Thomas P. Anzelmo, Geoffrey J. Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for Defendant/Appellee Wal-Mart Stores, Inc.
Before BARRY, PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
Linda Lopez appeals a judgment of the trial court affirming a jury verdict wherein the jury found no liability on the part of defendant, Wal-Mart Stores, Inc. We affirm.

FACTS AND PROCEDURAL HISTORY:
The following facts are undisputed: Ms. Lopez was Christmas shopping on December 21, 1989, with her 12-year-old son, Danny, in the Chalmette Wal-Mart store. Ms. Lopez entered the store, acquired a shopping basket, and proceeded to the toy department to purchase a gift for an infant relative. Danny turned left into an aisle in the toy department, and Ms. Lopez turned left into the *217 next aisle. Ms. Lopez faced the front of the store, and was speaking to her son through the shelves while selecting a toy. Suddenly, several boxes fell from the shelf behind her, striking her on the head and left shoulder.
At this point, the facts become highly disputed. Ms. Lopez claims that Wal-Mart employees stocking the shelves on the aisle behind her shoved merchandise onto her. She arrives at this conclusion based on the fact that Wal-Mart employees arrived on the scene with a ladder almost immediately. Wal-Mart claims that the accident occurred because a teen-aged boy climbing the shelves in the adjacent aisle caused the merchandise to fall. This version of the facts was testified to by the first Wal-Mart employee on the scene, Emily Westcott. She claims that she was in the pet department, directly behind the toy department, helping a customer when she heard boxes fall. She saw a boy jumping from the lower shelves as she passed on her way to investigate the noise. She did not have a ladder with her.
This matter was tried to a jury which rendered a verdict in favor of Wal-Mart, finding no negligence on its part. Ms. Lopez filed a Motion for Judgment Notwithstanding the Verdict, or alternatively, Motion for New Trial, which was denied by the trial court. This appeal followed.

DISCUSSION:
Ms. Lopez presents four issues on appeal. The first issue is whether the jury was clearly wrong in finding that Wal-Mart was not negligent. We cannot discern from the jury interrogatories whether the jury found that there was no premise hazard, or if it found that a premise hazard existed, but that Wal-Mart sufficiently exculpated itself from liability. Therefore, we must examine the record to see if a reasonable basis exists to support either or both factual findings.
An appellate court will not set aside a jury's findings in the absence of manifest error, or unless it is clearly wrong. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 7 (La.02/20/95), 650 So.2d 757, 762. In Mart v. Hill, 505 So.2d 1120 (La.1987), the Supreme Court set forth a two-part test for reversing a factfinder's determination on appellate review:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
(citing Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978)). Nonetheless, despite the vast discretion afforded the factfinder, appellate courts have a constitutional duty to review facts. The reviewing court may not merely decide if it would have decided the case differently, but must affirm the trial court where the latter's judgment is not clearly wrong. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112, p. 8 (La.07/05/94), 639 So.2d 216, 221. Further, "where two permissible views of the evidence exists the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State, 617 So.2d 880, 882-83 (La.1993).
Louisiana Revised Statute 9:2800.6 as enacted in 1988 is applicable to the facts of this case. This statute became effective on July 18, 1988, applying to all cases tried on or after that date. 1988 La. Acts No. 714.[1] Subpart A of the statute states:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
A plaintiff who is injured by falling merchandise must prove that a hazardous condition or defect existed presenting an unreasonable risk of harm which caused the injury.
A premise hazard is a condition which causes an unreasonable risk of harm to *218 customers under the circumstances. Johnson v. Ins. Co. of N. America, 360 So.2d 818 (La.1978); Matthews v. Schwegmann Giant Supermarkets, Inc., 555 So.2d 671, 673 (La. App. 4th Cir.1989), rev'd on evidentiary grounds, 559 So.2d 488 (La.1990). A plaintiff may prove the existence of a premise hazard by circumstantial evidence. Matthews v. Schwegmann Giant Supermarkets, Inc., 559 So.2d 488 (La.1990). Once a plaintiff makes a showing that a hazard existed, the burden shifts to the merchant to demonstrate that it used reasonable care to avoid such hazards. Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212, 1214 (La.1989); Matthews v. Schwegmann Giant Supermarkets, Inc., 555 So.2d 671, 673 (La.App. 4th Cir.1989), rev'd on evidentiary grounds, 559 So.2d 488 (La. 1990).
Ms. Lopez testified on cross-examination that she did not notice the condition of the merchandise on the aisle in which she was shopping, but then stated that it was stacked very high. She did not actually see the merchandise fall. She speculated that the merchandise was pushed off of the shelf from the next aisle by Wal-Mart employees who were stocking the shelves. This speculation was based on the fact that Wal-Mart employees arrived on the scene within seconds of the incident. To support her allegations of the existence of a premise hazard, Ms. Lopez introduced pictures of the aisles in question taken by her husband sometime after the accident and the testimony of two experts.
William Hite was accepted by the court as an expert in executive retail management, merchandising policies and procedures of department stores, over the objection of counsel for Wal-Mart. He testified that in his opinion the accident occurred because Wal-Mart employees stocking merchandise on the aisle behind Ms. Lopez pushed the boxes into her aisle. He opined that the boxes of merchandise were stacked too high, causing them to be top-heavy, and thus easily knocked over. Mr. Hite testified that when boxes are stacked flat, they normally will not fall on their own, "because, obviously, it's stacked in the safest manner that they can stack it on the shelf." In his opinion, Wal-Mart should have placed dividers between the merchandise on the two aisles to prevent merchandise from being pushed through from the opposite aisle. On cross-examination, Mr. Hite admitted that his opinion was based on Ms. Lopez's version of how the accident happened, that is, that because Wal-Mart employees arrived on the scene so quickly with a ladder, they must have been stocking the shelves on the adjacent aisle.
Mr. Wilfred Gallardo was accepted by the court as a safety expert. It was his opinion that the accident was a result of Wal-Mart stacking boxes too high on the shelves, and not securing them. Because the boxes were not secured, they could be shaken loose easily, for example, by a customer striking the rack with a shopping cart. He agreed with Mr. Hite that dividers were needed between the shelves to prevent merchandise from being pushed through from the other side.
Mr. Gallardo testified that he has been to this particular Wal-Mart store on several occasions, and has seen shelves being stocked. However, he has never seen shelves stocked with merchandise as high as that depicted in the photographs he used for his evaluation. On cross-examination, Mr. Gallardo admitted that he did not know how the shelves were stocked on the date of the accident. He believed that the fact that the accident happened was proof in and of itself that the shelves were stocked improperly.
Ms. Lopez also called James Rogodzinski, the store manager at the time of this incident. Mr. Rogodzinski testified that a safe height at which to stock merchandise is ten feet, but that during the Christmas season, they will stock as high as thirteen feet. He also stated that by law, the store is allowed to stock within eighteen inches of the ceiling. It was his opinion that whether it was safe to stock merchandise that high would depend on the nature of the merchandise. He was shown the photographs taken by Ms. Lopez's husband, and admitted that he had no reason to believe that the merchandise was stocked any differently on the day of the accident.
Based on our thorough review of the record, we cannot say that the jury was manifestly erroneous in finding that Ms. Lopez failed to carry her burden of proof. There were no witnesses as to how the accident *219 happened. Even Ms. Lopez could only assume that the boxes were pushed through into her aisle by Wal-Mart employees. She had no actual knowledge of that fact. Ms. Lopez's experts both admitted that they relied on her version of how the accident happened to reach their opinions. The jury was free to disregard the opinions of the experts concerning the cause of the accident. The weight to be given testimony of experts depends upon their qualifications and the facts on which they base their opinions. A trier of fact may evaluate expert testimony by the same principles as apply to other witnesses; it has great discretion to accept or reject expert or lay opinions. Durkee v. City of Shreveport, 587 So.2d 722, 728 (La.App. 2d Cir.), writ denied, 590 So.2d 68 (La.1991); also see Schlesinger v. Herzog, 95-1127, 95-1128 (La.App. 4th Cir. 04/03/96), 672 So.2d 701, writ denied, 96-1328 (La.10/04/96), 679 So.2d 1381.
In Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.), writ denied, 580 So.2d 923 (La.1991), a case relied on by Ms. Lopez, plaintiff was struck in the head from behind by falling glassware. She did nothing to cause the glassware to fall, and was the only witness to the accident. The assistant manager investigated the accident, and concluded that it happened the way plaintiff claimed. The trial court found that plaintiff had not carried her burden of proving that stacked glassware cartons created an unreasonably dangerous condition. In reversing the trial court, the Second Circuit stated that "[t]he totality of the circumstances created an inference of causal negligence by defendant which was not rebutted." The Court found that although the plaintiff could not determine exactly what happened, it was plausible to infer that the boxes were stacked precariously. Id. at 949. The Court found that defendant's argument that plaintiff occasionally suffered dizzy spells and could have fallen against the shelf causing the glasses to fall was speculative and clearly unsupported. Id.
This case is easily distinguished from Tobin. In that case, there was no evidence that anyone, customer or employee, was anywhere near the scene of the accident. Here, we have Ms. Lopez speculating that Wal-Mart employees were on the next aisle, and we have a Wal-Mart employee testifying that she saw a customer climbing down the shelves of the adjacent aisle. Although Mr. Hite believed that only "a monkey" could have climbed high enough without a ladder to push merchandise through to the other side, Mr. Gallardo stated that a customer striking the shelves with a shopping cart would be sufficient to dislodge stacked merchandise. Therefore, it is plausible that a teen-aged boy climbing the shelves could have shaken them enough to dislodge merchandise stocked on top. In Matthews, 559 So.2d at 488, the Supreme Court explained that when merchandise falls from a shelf without being touched by plaintiff and without any other customers in the area, the circumstantial evidence establishes that the condition of the shelf presented an unreasonable risk of harm. However, in this case there is conflicting testimony as to who was in the aisle behind Ms. Lopez, and the jury was within its discretion to assess the credibility of that testimony. Thus, the record supports a factual finding by the jury that a customer over which Wal-Mart had no control caused the boxes to fall, injuring Ms. Lopez.[2]
Ms. Lopez's second assignment of error concerns damages. Because we find no error in the finding of the trial court, we need not reach this issue.
The third assignment of error is that the trial court erred in allowing the introduction of an exhibit for jury inspection. The item introduced was a box containing a Little Tikes "Tubby Tug Tug." Ms. Lopez claims that this box was not reflective of one of the boxes that struck her; rather, she was struck by boxes containing toy trucks, boats and trailers.
Ms. Lopez listed in her list of exhibits prior to trial "Tubby Tub Tub Toys which struck plaintiff." Defendants stated in their *220 pre-trial inserts that they intended to use any and all exhibits listed by plaintiff. Further, the incident report states that four boxes of Little Tyke Tug Boats were involved in the accident. Ms. Lopez argues that Wal-Mart did not call any witness to substantiate the contents of the report. Obviously, Ms. Lopez could have easily done so herself if she questioned the report. It is within the discretion of the jury to decide, based on the evidence and testimony, whether they believed this particular toy to be representative of the items which fell on Ms. Lopez. We do not find that the introduction of this exhibit was improper or prejudicial.
Ms. Lopez's last assignment of error is that the trial court's denial of her motion for a new trial without a hearing was improper. Ms. Lopez claims that new evidence came to light after the trial, and that she should have been afforded the opportunity to present this evidence at a hearing.
Louisiana Code of Civil Procedure art.1972(2) mandates that a new trial be granted when the moving party "has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during trial." The evidence must not be merely cumulative, and it must be such that it would tend to change the result of the trial. Turner v. Dameron-Pierson Co., Ltd., 95-0143 (La. App. 4th Cir. 11/16/95), 664 So.2d 739.
Although Louisiana Code of Civil Procedure art.1976 provides that a "[n]otice of the motion for new trial and of the time and place assigned for hearing thereon must be served upon the opposing party...," a jurisprudential exception has developed whereby a motion for new trial may be summarily denied in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial. Sonnier v. Liberty Mutual Ins. Co., 258 La. 813, 248 So.2d 299 (1971); Allen v. Noble Drilling, Inc., 93-2383, p. 6 (La.App. 4th Cir. 05/26/94), 637 So.2d 1302. While Justice Summers' dissent in Sonnier seems to represent a more reasoned interpretation of the current Code of Civil Procedure articles, we are nonetheless bound by the prior rulings. Thus, to be entitled to a hearing on her motion for new trial, Ms. Lopez would have to make a clear showing as set forth in Sonnier and its progeny.
Ms. Lopez claimed in her motion for a new trial that she had learned, since trial, that Emily Westcott, the Wal-Mart employee who testified at trial, had perjured herself. This newly discovered evidence was acquired as follows: A friend and co-worker of Emily Westcott called Ms. Lopez's son, and told him that Emily Westcott had related to her a different version of the accident than the one she testified to at trial. This friend acquired this information prior to trial, but was unable to reach Ms. Lopez's son until after trial. This evidence is clearly hearsay and would not have been admissible at trial. Thus, it would not have changed the result of the trial because the jury would not have been allowed to hear it.
Ms. Lopez claims also that another friend, who attended the trial, realized that one of the Wal-Mart employees listed on the incident report and to whom several references were made during trial, was her niece. This friend inquired as to why Karen Burton was not called as a witness. Ms. Lopez claims that they were unable to call Ms. Burton because Wal-Mart refused to supply her home address in answers to interrogatories. Ms. Lopez claims that she exercised due diligence in attempting to ascertain Ms. Burton's address. However, the record does not reveal a motion to compel filed by her on this issue.[3] Obviously, this argument should have been the subject of a motion to compel prior to trial, and is not properly raised for the first time on appeal.
Based on our reading of her motion for new trial, Ms. Lopez failed to establish the necessary criteria to invoke a contradictory hearing on her motion. There was therefore *221 no error in the trial court denying her motion ex parte.
Thus, for the reasons assigned above, the judgment of the trial court is affirmed.
AFFIRMED.
BARRY, J., concurs with reasons.
PLOTKIN, J., dissents with reasons.
BARRY, Judge, concurring with reasons.
In Sonnier v. Liberty Mutual Insurance Company, 258 La. 813, 248 So.2d 299 (1971), the Louisiana Supreme Court considered whether constitutional due process or the Code of Civil Procedure articles required a contradictory hearing on a motion for new trial. The Court noted that the provisions of the prior Code of Practice of 1870 contemplated summary decisions on motions for new trial; the comment under La. C.C.P. art.1979 entitled "Summary decision on motion; maximum delays" declared that the article was intended to be a consolidation of 1870 Code art. 563, which provided for a summary decision on applications for new trial, and R.S. 13:4207, which fixed the maximum delays for such decisions. The Court declared that Comment(c) under La. C.C.P. art.1976 indicated that the redactors of the Code of Civil Procedure were under the misapprehension that the practice of applying for a new trial by rule "was general throughout the State." No jurisprudential exception has developed. The Sonnier Court interpreted the Code of Civil Procedure articles relating to motions for new trial. The Court held:
Since the trial judge is specifically given the power to grant a new trial on his own motion, and since the prior jurisprudence has approved the summary denial of a motion for new trial, and since the comments of the redactors of the Code of Civil Procedure under C.C.P. art.1979 purported to represent a consolidation of the provisions of article 563 of the Code of Practice of 1870 and R.S. 13:4207, there is no clear indication that the Code of Civil Procedure intended to change the prior law, under which a trial judge would have the power to decide ... without fixing the motion for contradictory hearing.
....
... To require the court and lawyers to use up otherwise productive hours away from the office or away from other pressing litigation to rehash a trial recently conducted to a conclusion, in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial, would be to compound unnecessarily delays which already plague the administration of justice. (footnote omitted).
Sonnier, 248 So.2d at 302-303.
PLOTKIN, Judge, dissenting with written reasons.
Although I agree in principle with both of my esteemed collegues that no hearing is generally required on a motion for new trial, I believe that the circumstances of the instant case do require a hearing. Thus, I respectfully dissent from the portion of the opinion affirming the trial court's denial of the plaintiff's motion for new trial.
In support of its position that a hearing is not required in the instant case, the writing judge quotes Sonnier v. Liberty Mutual Insurance Co., 258 La. 813, 248 So.2d 299 (1971) and Allen v. Noble Drilling, Inc., 93-2383 (La.App. 4 Cir. 5/26/94), 637 So.2d 1298 for the proposition that "a jurisprudential exception [to the mandatory hearing rule] has developed whereby a motion for new trial may be summarily denied in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial." Allen, 637 So.2d at 1302. However, another important part of the appellate court's standard for affirming the denial of the motion for new trial without requiring a hearing in Allen was not mentioned by the writing judge. The Allen court also stated that determination of a motion for new trial should depend in part on whether "the motion simply reiterates issues thoroughly considered at the trial on the merits." 637 So.2d at 1302.
*222 The grounds supporting the motion for new trial in the instant case fall under the mandatory provisions of La. C.C.P. art. 1792. Under that article, a trial judge "shall" grant a motion for new trial, when the following is true:
[T]he party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
Thus, a trial court generally has no discretion to deny a well-supported motion for new trial based on newly-discovered evidence. In order to be well-supported, such a motion for new trial must be accompanied by an affidavit; otherwise, the trial court may summarily dismiss the motion. Bergeron v. Illinois Central Gulf Railroad Co., 402 So.2d 184 (La.App. 1st Cir.), writ denied, 404 So.2d 1260 (La.1981). The affidavit must indicate that the party seeking the new trial is able to prove the following things: (1) that the new evidence was discovered after trial, (2) that the new evidence is not cumulative, (3) that the new evidence would tend to change the result in the case, and (4) that the new evidence could not have been discovered, with due diligence, before the trial was completed. Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983); Wright v. Hirsch, 572 So.2d 783 (La.App. 4th Cir.1990), writ denied, 576 So.2d 31 (La.1991).
In the instant case, the plaintiff's motion for new trial based on newly-discovered evidence is accompanied by an affidavit, which includes sufficient information to indicate that the plaintiff could prove all the elements listed above which are necessary for the granting of a motion for new trial. That affidavit indicates that the plaintiff discovered a material witness only after the trial had ended when a friend who had attended the trial helped her locate a Wal-Mart employee who witnessed the accident. Although it does not specifically state that the plaintiff was unable, by due diligence, to locate the witness prior to trial, the circumstances set forth in the affidavit indicate that the plaintiff was not able to do so, even with due diligence. Given the mandatory nature of the requirement that the trial judge grant a motion for new trial when the motion is based on newly-discovered evidence, I believe that the plaintiff is entitled to a hearing on her motion under the circumstances of the instant case.
I recognize the fact that the plaintiff failed to follow up on her discovery request seeking the addresses of witnesses to the accident. The writing judge finds that the plaintiff's failure to file a second interrogatory seeking the address of the witness was a tacit waiver of the request. However, the fact is that the plaintiff claims that she now has the address of the witness. Under these facts, the plaintiff should be allowed to present her evidence and attempt to prove the elements listed above. The fact that she failed to file a second interrogatory should be considered simply in deciding the fourth factor; it should not automatically result in the denial of her motion.
Moreover, I do not believe that the factors set forth in Sonnier and Allen which allow a trial court to deny a motion for new trial without a hearing are present in this case. The plaintiff seeks the opportunity to present the testimony of a Wal-Mart employee who allegedly witnessed the accident. The testimony of an eye-witness is, in my view, "reasonably calculated to change the outcome," especially in a close case such as this. Moreover, the plaintiff's inability to present the testimony of the witness is "reasonably believed to have denied the applicant a fair trial."
Accordingly, I would remand the case to the trial court only for the purpose of holding a hearing on the motion for new trial.
NOTES
[1] La. R.S. 9:2800.6 was substantially amended in 1990, and became effective September 1, 1990. The provisions of the amended statute apply only to causes of action which arose on or after the effective date of the amendment. Ms. Lopez's accident occurred December 21, 1989.
[2] We do not suggest that a store will always exculpate itself from liability by proving that a customer was in the area of the accident.
[3] Ms. Lopez did file a motion to compel seeking answers to her interrogatories. However, these were apparently answered at some point, and she did not file a second motion seeking more complete answers, i.e., a valid address for Karen Burton.