747 So.2d 701 (1999)
Vicki L. LITTLETON, Individually and Calton R. Littleton, Sr., Plaintiffs-Appellees,
v.
WAL-MART STORES, INC. and Curtis Williams, Defendants-Appellants.
No. 99-390.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1999.
Rehearing Denied February 16, 2000.
*702 Chris J. Roy, Jr., Attorney At Law, Alexandria, Louisiana, Attorney for Appellees.
Vicki C. Warner, Attorney At Law, Shreveport, Louisiana, Attorney for Appellant.
BEFORE YELVERTON, SAUNDERS, WOODARD, SULLIVAN and PICKETT, Judges.
YELVERTON, Judge.
Wal-Mart Stores, Inc. appeals a judgment for damages sustained by Vicki Littleton, a customer, when a case of paper towels being stacked by store employees fell upon her. It raises three assignments of error regarding: (1) the summary judgment finding it liable; (2) the amount of general damages awarded by the trial court; and (3) the denial of its demand for a trial by jury. Finding no error, we affirm the judgment.

FACTS
On the morning of June 13, 1996, Vicki and her five-year-old son went to a Wal-Mart store in Pineville, Louisiana, to buy an item he needed for day-care. Curtis Williams, a Wal-Mart employee, was stacking cases of paper towels on a pallet in an aisle. While Vicki was walking down the aisle with her son trailing her, a case stacked on the pallet fell toward her. She reached out with her left hand to try to stop the box and push it away from herself and her son. It struck her anyway. As a result of the accident, Vicki sustained a ruptured disc in her neck which required surgery. Vicki and her husband sued Wal-Mart.
The Littletons filed a motion for summary judgment on the issue of Wal-Mart's liability. The motion was granted by the trial court. Wal-Mart requested a trial by jury as to damages. This was denied because the required cash deposit had not been posted timely. The amount of damages was tried. The trial court awarded Vicki $32,238 for lost wages, $22,291.88 for medical expenses, and $150,000 in general damages.

*703 SUMMARY JUDGMENT
Wal-Mart contends the trial court erred in granting summary judgment in favor of the Littletons on the issue of liability. It claims that there was no evidence presented that its employee, Williams, failed to make a reasonable effort to keep the premises free of a hazardous condition that reasonably might give rise to damage, the duty required of merchants by La.R.S. 9:2800.6(A). Wal-Mart also claims that there was insufficient evidence under the general negligence standard for negligence because all that was presented was evidence that a box fell. Wal-Mart admits that it did not oppose the Littletons' motion for summary judgment, but claims that the evidence presented by the Littletons in support of their motion was not sufficient to establish the absence of a genuine issue of material fact as to its liability.
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La.Code Civ.P. art. 969 and is favored in Louisiana. Taylor v. Rowell, 98-2865 (La.5/18/99); 736 So.2d 812. Making a de novo review of the pleadings and documentation supporting the motion, we find that there is no genuine issue of material fact as to the liability of Wal-Mart and that the Littletons were entitled to judgment as a matter of law for the following reasons. Id.; La.Code Civ.P. art. 966.
We agree with the Littletons that the law of merchant liability found in La.R.S. 9:2800.6 does not apply to every accident on a merchant's premises. The burden of proof instruction found in La. R.S. 9:2800.6(B) applies when there is a claim for a fall due to a condition in or on a merchant's premises. The statute is aimed at "slip and fall" or "trip and fall" cases. It is meant to apply to customers falling in stores, not to customers being hurt by falling merchandise. Moreover, if a customer slips or trips and falls because of the direct and simultaneous negligence of a store employee, the burden of proof under ordinary negligence principles is applicable and not the burden of proof under La.R.S. 9:2800.6. Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La. 1993); Frelow v. St. Paul Fire & Marine Ins. Co., 93-759 (La.App. 3 Cir. 2/2/94); 631 So.2d 632.
In this case the Littletons claim that Wal-Mart became liable when Vicki was struck by a case of paper towels as the result of the negligence of its employee, Williams. Littleton did not fall, but she was injured by falling merchandise. However, Subsection A of La.R.S. 9:2800.6 provides the general duty of a merchant relating to aisles, passageways, and floors and is not a duty limited to injuries caused by falls and provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
In order to recover in an action against a merchant, a store patron who is injured by falling merchandise must prove that a hazardous condition or defect existed, presenting an unreasonable risk of harm which caused injury and may do so by circumstantial evidence. Lopez v. Wal-Mart Stores, Inc., 94-2059 (La.App. 4 Cir. 8/13/97); 700 So.2d 215, writ denied, 97-2522 (La.12/19/97); 706 So.2d 457; Leonard v. Wal-Mart Stores, Inc., 97-2154 (La. App. 1 Cir. 11/6/98); 721 So.2d 1059.
A premise hazard is a condition which causes an unreasonable risk of harm to customers under the circumstances. A plaintiff may prove the existence of a premise hazard by circumstantial evidence. Once a plaintiff makes a showing that a hazard existed, the burden shifts to the merchant to demonstrate *704 that it used reasonable care to avoid such hazards.
Lopez, 700 So.2d at 217-218 (citations omitted).
In support of their motion for summary judgment, the Littletons introduced several pages of the deposition testimony of Williams. Williams explained that he was stacking paper towels at the time of the accident. He said that on one of the back corner stacks were cases of Zee paper towels, which were a little shorter than the boxes of Bounty paper towels. Williams then described how he placed a case of Bounty paper towels on top of another case of Bounty which was sitting on top of a case of Zee paper towels. He described how one corner of the Bounty case that he was stacking was sticking out over the Zee case which caused the weight to shift, and the case of Bounty tumbled off the pallet. Williams admitted that Vicki did not do anything to cause the case to fall.
The Littletons clearly proved that a hazard existed in the manner in which the paper towel boxes were stacked. It is obvious that Williams' actions created an unreasonable risk of harm which immediately resulted in one of the boxes falling into the aisle hitting an unsuspecting patron who was shopping in the aisle and who was without fault. Wal-Mart offered no evidence that it had exercised reasonable care to avoid this type of accident. There is no question in this case but that Williams' actions caused the case of paper towels to fall. With summary judgment being favored and there being no evidence to contradict these material facts, we find the trial court did not err in granting the Littletons' motion for summary judgment on the issue of liability.

GENERAL DAMAGES
The judgment total was $204,529.88. In its reasons for judgment the trial court itemized: medical expenses of $22,291.88, lost wages of $32,238, and general damages of $150,000.
Wal-Mart claims that the award of $150,000 for general damages is excessive. It claims that Vicki's injury was not severe enough to warrant the general damage award.
Pursuant to Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), we have reviewed the facts and circumstances pertaining to Vicki's condition and find that $150,000 in general damages was not an abuse of discretion.
A couple of hours after the incident at Wal-Mart, after she had dropped her child off at day-care and gone to work, Vicki began to feel pain in her neck, shoulder, and back. She tried to go to a clinic at noon, but it was only operating as a pediatric clinic. She then went to an out-patient care facility where she was given some medicine and told to see her family doctor on Monday.
The incident occurred on a Friday. Over the weekend her pain increased, so Vicki saw her family doctor, Dr. Robert Moore on Monday. By this time Vicki also had a large bruise on her left forearm where she had hit the box. After examining Vicki and reviewing x-rays made at the clinic, Dr. Moore ordered a cervical MRI. Based on her complaints, he suspected she had a ruptured cervical disc. Vicki had an MRI on July 2, 1996, which revealed a herniated disc at C5-6. He referred her to a neurosurgeon, Dr. John Patton.
Dr. Patton examined Vicki on August 8, 1996, and found she had restriction of movement in her neck. He agreed that the MRI demonstrated a ruptured disc at C5-6. On August 20, 1996, Dr. Patton performed surgery and removed the disc at C5-6 to relieve pressure on the nerve. He then performed a fusion.
Vicki was in the hospital for three days following the surgery. She had to use a stiff collar 24 hours a day for approximately two months. She then graduated to a soft collar. The only time she removed *705 these collars was when she bathed. She even had to sleep in the collars.
At the time of the accident Vicki was working as a secretary at Pinecrest Developmental Center. Since her job required her to look down, which was something she could not do, she had to take a disability leave of absence for a year. Dr. Patton explained that it could take up to a year for the graft in her neck to completely fuse. She finally returned to work on February 16, 1998.
Both Drs. Moore and Patton agreed that the ruptured disk was caused by Vicki's movement in attempting to block the falling box. There was no question but that this was a new injury and not something that had occurred over time.
Vicki testified that pain in her neck was intense until she had the surgery. She also explained at trial that she felt she had to be careful in her activities because of the neck surgery and her fear of damaging that area in her neck. Dr. Patton explained that the fusion restricted the movement in her neck, and she now has an increased risk of a ruptured disk above or below the area of fusion.
We find that $150,000 in general damages was an appropriate award under the circumstances of this case. The trial court did not abuse its discretion.

JURY TRIAL
Wal-Mart contends that the trial court erred in granting the Littletons' motion to strike its jury demand. Three reasons have been urged in support of this contention: (1) the trial court failed to order the amount of the bond more than 30 days prior to trial; (2) the clerk of court used part of the jury deposit funds without notice to anyone; and (3) the jury funds were deposited more than 30 days prior to the actual trial date.
The Littletons argue that we should not consider this assignment of error because Wal-Mart previously filed a writ application with this court, the application was denied, and that ruling should be the "law of the case."
The "law of the case" doctrine is not an inflexible rule. Dodson v. Community Blood Center, 633 So.2d 252 (La.App. 1 Cir.1993), writs denied, 93-3158, 93-3174 (La.3/18/94); 634 So.2d 850, 851. Because this matter is now before a five-judge court and one of the members of the original three-judge panel was also a member of the panel which denied writs and now wishes to reexamine the issue, we deem it appropriate to address the merits of Wal-Mart's arguments concerning its right to a jury trial. For reasons which follow, a majority finds that this court's earlier denial of the writ application was the proper decision.
Wal-Mart made a timely request for a jury trial when it answered the Littletons' petition. On March 10, 1997, the trial court scheduled the jury trial for August 18-22, 1997. It was not until July 30, 1997, that the order was signed setting the cash deposit at $3,000 which was to be posted 30 days prior to trial. The cash deposit was then filed on Aug. 11, 1997.
Louisiana Code of Civil Procedure 1734.1(A) (emphasis supplied) pertaining to a cash deposit for jury trials provides in pertinent part:
When the case has been set for trial, the court may order, in lieu of the bond required in Article 1734, a deposit for costs, which shall be a specific cash amount, and the court shall fix the time for making the deposit, which shall be no later than thirty days prior to trial. The deposit shall include sufficient funds for payment of all costs associated with a jury trial, including juror fees and expenses and charges of the jury commission, clerk of court, and sheriff. The required deposit shall not exceed three hundred dollars per day for each day the court estimates the trial will last. Notice of the fixing of the deposit shall be served on all parties. If the deposit is not timely made, any other *706 party shall have an additional ten days to make the required deposit. Failure to post the cash deposit shall constitute a waiver of a trial by jury.
This provision was in effect when the deposit was made in this case.
The supreme court analyzed a different version of Article 1734.1 in Dept. of Transp. & Develop. v. Walker, 95-0185 (La.6/30/95); 658 So.2d 190. The supreme court held that Article 1734.1(A) gave the trial court the discretion to choose any day from 30 days before trial to the morning of, but preceding, the trial to set as the date the cash deposit is due. Also, if the trial court failed to fix an exact date within 30 days prior to the start of the trial, the deposit of a specified sum on any day within 30 days prior to trial, including the morning of trial, would be timely.
Applying that analysis, Wal-Mart's filing of the cash deposit in this case would have been timely. However, the legislature amended Article 1734.1 in 1995 to read as it is quoted above. Prior to the amendment, Article 1734.1(A) (emphasis supplied) provided that "the court shall fix the time for making the deposit, which time shall be within thirty days prior to trial." Article 1734.1 as amended (emphasis provided) provides that the deposit be "no later than thirty days prior to trial." With this change, we regard the interpretation of Article 1734.1(A) by the supreme court in DOTD v. Walker, 658 So.2d 190, as no longer applying.
Due to the legislative change, the cash deposit must now be at least 30 days before the trial starts. Wal-Mart does not deny that the cash deposit was not made 30 days before the start of trial. The reason this happened was because an order to set the amount and date of the cash deposit was not filed with the court and therefore, not signed until July 24, 1997. This was not 30 days before the start of the trial. Wal-Mart had filed its answer in 1996. Rule X of the Rules of Court for the Thirty-Fifth Judicial District Court required that "all orders for a jury trial shall be presented to the Judge." Wal-Mart had sufficient time to file an order with the court to set the amount and date of the cash deposit to insure timely compliance with the mandates of Article 1734.1(A). Wal-Mart's failure to insure that the procedural mandates of Article 1734.1(A) were complied with was fatal to its claim for a jury trial. It cannot blame the trial court for the late signing of the order when the court was not timely presented with an order. See King v. Aetna Life & Cas., 552 So.2d 73 (La.App. 3 Cir. 1989), writ denied, 556 So.2d 1264 (La.1990) and Manuel v. Shell Oil Co., 94-590 (La.App. 5 Cir. 10/18/95); 664 So.2d 470, writ denied, 96-0141 (La.3/8/96); 669 So.2d 397, in which the courts held that the trial court was correct in denying the requested jury trial due to the parties' failure to comply with the procedural requirements for perfecting a jury trial. The law is clear that the cash deposit must be filed 30 days prior to trial.
Once Wal-Mart lost its right to a trial by jury, the right could not be revived by the continuance of the trial date to a later date. In Kimball v. Allstate Ins. Co., 97-2885, 97-2956 (La.4/14/98); 712 So.2d 46, the supreme court stated that "the right to a jury trial in a civil case is not fundamental" and that the legislature can provide limitations upon one's ability to obtain a jury trial provided the limiting law does not violate any constitutional provision. Article 1734 was recognized as one of those non-violative limitations.
When Wal-Mart failed to timely make the cash deposit, the right to a jury trial was lost. A continuance of the date of the trial did not commence another "window of opportunity" for Wal-Mart. See generally Broussard v. Wal-Mart Stores, Inc., 96-513 (La.App. 3 Cir. 11/6/96); 682 So.2d 894, writ granted, judgment vacated, and remanded on other grounds, 96-2931 (La.11/7/97); 703 So.2d 29.
Wal-Mart also complains that it had no notice that the previously filed cash deposit had been depleted. That fact makes no *707 difference to this case. At the hearing on the motion to strike the jury trial, the trial court indicated that if it had been within its authority it would have given the defendant "time to re-post the bond." But it was the untimely filing of the cash deposit, and not the deficiency of the deposit, that caused Wal-Mart to lose its right to a jury trial. As this court pointed out in our earlier ruling on the writ taken by Wal-Mart, Wal-Mart admitted that the cash deposit was filed late. We therefore adhere to the earlier ruling of this court that the trial court did not err in holding that the cash deposit was not timely filed as required by Article 1734(A).
For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Wal-Mart Stores, Inc.
AFFIRMED.
WOODARD, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
PICKETT, J., DISSENTS.
WOODARD, J., dissenting.
I respectfully dissent from the part of the majority's opinion which affirms the trial court's decision to strike Wal-Mart's jury trial demand.
Essentially, by its ruling, the majority rewrites that part of La.Code Civ.P. art. 1734.1(A) which designates the time limit for making the deposit for costs. The legislature wrote that the time period: "shall be no later than thirty days prior to trial." By its ruling, the majority changes the statute to read, "shall be no later than thirty days prior to [the first fixing for] trial." Reading into a statute that which is not there is contrary to La.Civ.Code art. 9 and La.R.S. 1:4. And in doing so, the majority introduces a legal technicality into the statute that deprived Wal-Mart of its fundamental right to have its case decided by a jury of its peers.
The legislature must have intended the phrase, "thirty days prior to trial," to mean exactly what it says; otherwise, it could have easily written it as the majority suggests, "prior to the first fixing for trial." Statutes are to be construed as written[1] and their words are to be given their generally prevailing meaning.[2] BLACK'S LAW DICTIONARY defines "trial" to mean:
A judicial examination and determination of issues between parties to action, whether they be issues of law or of fact, before a court that has jurisdiction.[3]
(Emphasis added.) Reading the statute with its clear meaning, as stated in BLACK'S, would not lead to absurd consequences nor prejudice either party, as a party would still have a minimum of thirty days to prepare for a jury trial no matter when that trial would occur.
In the case sub judice, on July 30, 1997, the trial court signed an order, setting the cash deposit at $3,000.00 and ordered that it be posted thirty days before trial, which was scheduled for August 18-22, 1997. Wal-Mart did not make the $3,000.00 deposit until August 11, 1997too late to be entitled to a jury trial if there had been an adjudication of the issues on August 18-22.[4] However, there was no trial on that date, as the parties agreed to a continuance, and the trial was, ultimately, rescheduled for May 11.
When the parties agreed to this continuance, the only question concerning Wal-Mart's right to a jury trial should have been whether more than thirty days would pass between the time it had made the deposit for costs and the trial. It would have. Thus, Wal-Mart met the statutory requirements and should have been given *708 a jury trial to decide quantum at the May 11, 1998 trial.
The majority writes that "[a] continuance of the date of the trial did not commence another "window of opportunity" for Wal-Mart," citing, with a See generally citation, Broussard v. Wal-Mart Stores, Inc.[5] Even though Broussard is introduced with a See generally introductory signal, in my opinion, the case is so distinguishable from this case that it is entitled to no weight for the proposition for which the majority uses it as authority. Broussard concerned the application of La.Code Civ.P. art. 1733(C), which relates to the right to request a jury trial from the date of the last pleading filed when that pleading addresses an issue triable by jury, and which, incidentally, permits more than one "window of opportunity" to request a jury trial.
I find no legal support for the majority's holding in the instant case. Further, not only is the straight forward construction, which I have offered, true to the law of statutory interpretation in the Civil Code and the Revised Statutes, but it also follows Tenpenny v. Ringuet,[6] which holds that the right to a jury trial is fundamental and that every presumption against a waiver, loss, or forfeiture of the right to a jury trial should be indulged by the courts.
I acknowledge that my dissent is inconsistent with my earlier vote to deny Wal-Mart's supervisory writ, which challenged the trial court's decision to grant the Littletons' motion to strike the jury. Since that time, I have had the opportunity for further thought. If I had to vote on the writ application today, I would vote differently than I did.
NOTES
[1] La.Civ.Code art. 9; La.R.S. 1:4.
[2] La.Civ.Code art. 11.
[3] BLACK'S LAW DICTIONARY (6th Ed.1990).
[4] Blanchet v. Miller, 96-1602 (La.App. 3 Cir. 12/5/96); 689 So.2d 486.
[5] 96-513 (La.App. 3 Cir. 11/6/96); 682 So.2d 894, writ granted, judgment vacated, and remanded on other grounds, 96-2931 (La.11/7/97); 703 So.2d 29.
[6] 95-1036 (La.App. 3 Cir. 3/6/96); 670 So.2d 644, writ denied, 96-880 (La.5/1/96); 673 So.2d 612.