NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INNOVENTION TOYS, LLC,**
*Plaintiff-Appellee*

v.

**MGA ENTERTAINMENT, INC., WAL-MART STORES, INC., TOYS "R" US, INC.,**
*Defendants-Appellants*

---

2014-1731

---

Appeal from the United States District Court for the Eastern District of Louisiana in No. 2:07-cv-06510-SM-MBN, Judge Susie Morgan.

---

Decided: April 29, 2015

---

JAMES C. OTTESON, Arnold & Porter, LLP, Palo Alto, CA, argued for plaintiff-appellee. Also represented by DAVID A. CAINE, THOMAS T. CARMACK; BRANDON D. BAUM, Agility IP Law, LLP, Menlo Park, CA.

DONALD ROBERT DUNNER, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for defendants-appellants. Also represented by ALLEN MARCEL SOKAL.

———————————

Before LOURIE, PLAGER, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Innovention Toys, LLC sued MGA Entertainment, Inc., Wal-Mart Stores, Inc., and Toys "R" Us, Inc. (collectively, MGA) for infringement of U.S. Patent No. 7,264,242, entitled "Light-Reflecting Board Game." The district court initially held, on summary judgment, that MGA infringed the asserted claims of the patent and had not created a triable issue on its obviousness challenge. The district court entered an injunction against MGA, which appealed under 28 U.S.C. § 1292(c)(1). We affirmed on infringement but vacated and remanded on nonobviousness because the district court had failed to recognize that key prior-art references were pertinent prior art and had incorrectly found the level of ordinary skill in the art to be that of a layperson. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314 (Fed. Cir. 2011). On remand, the case proceeded to trial, where the jury rejected MGA's obviousness challenge, found that MGA's infringement was willful, and awarded damages to Innovention both from the time the patent issued and, under 35 U.S.C. § 154(d), from the time the patent application was published. The district court adopted the jury's findings and trebled the damages under 35 U.S.C. § 284. On MGA's new appeal, we reverse only as to willful infringement and remand for entry of a judgment without any enhancement under § 284 and for reconsideration of the award of attorney's fees under 35 U.S.C. § 285.

BACKGROUND

The '242 patent discloses a chess-like board game and methods for playing the game. The board generates laser beams for the players, who have various movable board

pieces. Some of the pieces have mirrors that can reflect (and change the direction of) the laser beams. The players "alternate in moving pieces from square to square or rotating pieces in place." '242 patent (Abstract). Each player's goal is to direct his or her laser onto the opposing side's "key piece." *Id.*

Claim 31 is representative:

> A board game for two opposing players or teams of players comprising:
>
> a game board, movable playing pieces having at least one mirrored surface, movable key playing pieces having no mirrored surfaces, and a laser source,
>
> wherein alternate turns are taken to move playing pieces for the purpose of deflecting laser beams so as to illuminate the key playing piece of the opponent.

*Id.*, col. 12, lines 37–44. The preferred embodiment is Egyptian-themed—the key piece dubbed the "Pharaoh," the non-key pieces dubbed "Obelisks," "Pyramids," and "Djeds."

Innovention, the assignee of the patent, was formed to create and sell a game based on the patent. It marketed its game first as "Deflexion" and later as "Khet."

Innovention exhibited a prototype of Deflexion at the International Toy Fair in New York City in early 2005. Around the same time, MGA game developer Ami Shapiro began work on a board game called "Laser Battle." Mr. Shapiro's resume lists him as attending the fair. In December 2005, Mr. Shapiro bought two copies of Deflexion, sending one to an MGA engineer in China, Alex Fan. Upon receipt of the game, Mr. Fan remarked to Mr.

Shapiro over email that the box was "marked with 'patent pending'" and asked whether Mr. Shapiro knew which part was patented. J.A. 5030. The record contains no response from Mr. Shapiro.

In February 2006, Innovention filed a patent application (11/353,863), which was published in October 2006 and which, with certain amendments to the claims, issued as the '242 patent in September 2007. While Mr. Shapiro and Mr. Fan worked on Laser Battle, Innovention sold Deflexion in impressive numbers and garnered critical acclaim for the game. When Innovention learned of Laser Battle in late 2006, it sent MGA a notice letter with a copy of the published '863 application. MGA did not respond. After MGA began selling Laser Battle through retailers, Innovention sued MGA for infringement of claims 31–33, 39–41, 43, 44, 48–50, 53, and 54.

MGA's defense was that the subject matter of the asserted claims would have been obvious to a relevant skilled artisan at the relevant time in light of (a) Swift's U.S. Patent No. 5,145,182, which claims a laser board game with deflecting pieces that players put in place before, but do not move during, the game and (b) two "Laser Chess" magazine articles, which disclose a computer game in which each player manipulates screen images of a "laser-firing piece and various reflective objects" to try to hit the opponent's "king," J.A. 5310. Before trial, the district court granted summary judgment of infringement and nonobviousness and on that basis enjoined MGA. On appeal, this court vacated and remanded with respect to nonobviousness, holding in key part that the Laser Chess articles are analogous prior art that must be considered in the obviousness analysis. *Innovention*, 637 F.3d at 1321–24. In remanding, we noted that various factual issues awaited resolution by the district court, including the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of skill in the art, the pres-

ence or absence of motivation to combine, and the persuasiveness of any objective indicia of nonobviousness. *Id.* at 1323–24.

At trial, the jury resolved all issues in Innovention's favor, finding that (1) a skilled artisan would have a bachelor's degree in mechanical engineering or equivalent experience; (2) there are differences between the combination of the prior art and the claims; (3) it is not highly probable that a skilled artisan would have had both a motivation to combine the prior art and a reasonable expectation of success; (4) six objective indicia—including commercial success, long-felt need, praise, and copying—point to nonobviousness; (5) it is not highly probable that the claims would have been obvious to a skilled artisan; and (6) MGA's infringement of the '242 patent was willful.

As to damages, the jury awarded $1,405,708 in lost-profit damages starting in September 2007, the time of the patent's issuance, and $167,455 in reasonable-royalty damages for the pre-issuance period starting in October 2006, the date the patent application was published. With respect to pre-issuance damages, the district court had already ruled, in denying a summary-judgment motion by MGA, that such damages would be permissible under 35 U.S.C. § 154(d) because the scope of the issued claims are substantially identical to the scope of the published application's claims. MGA preserved the issue in seeking judgment as a matter of law under Fed. R. Civ. P. 50, and the district court rejected MGA's renewed contention on the issue by relying on its earlier summary-judgment analysis. The district court also denied MGA's post-verdict motion for judgment as a matter of law or a new trial on obviousness and on willful infringement, concluding in particular that MGA's obviousness defense was not objectively reasonable. The court then trebled the damages award.

MGA appeals the district court's determinations regarding nonobviousness, willful infringement, and pre-issuance damages.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The case arises from within the Fifth Circuit.  The standards of review are the normal ones: de novo review of the denial of a motion for judgment as a matter of law, a motion that may not be granted "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did," *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039–40 (5th Cir. 2011) (internal quotation marks omitted); and abuse-of-discretion review of the denial of a new-trial motion for want of a showing that "the verdict is against the great weight of the evidence," *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002) (internal quotation marks omitted).

## A

MGA's primary argument is that the '242 patent should be invalidated for obviousness over Swift and the Laser Chess articles.  Obviousness presents a question of law based on underlying findings of fact. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  Relevant facts include the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the field of the invention, and any relevant objective indicia of nonobviousness. *Id.* at 17–18.  Moreover, "[a] party asserting that a patent is obvious 'must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014).  "[W]e review any underlying findings of

fact by the jury—whether explicit or implicit—for substantial evidence, [and] the ultimate determination of obviousness . . . de novo." *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1167 (Fed. Cir. 2015).

The district court properly denied MGA's motion for judgment as a matter of law or a new trial. There was substantial evidence for the jury reasonably to have found that MGA did not prove facts essential to its particular obviousness challenge. Likewise, the district court did not abuse its discretion in concluding that the jury's findings were not against the great weight of the evidence. We need not separate those closely related issues in our discussion of the evidence.

As the district court discussed at great length, the jury here not only determined that the subject matter of the claims would have been nonobvious, but also decided every underlying factual issue in favor of that conclusion. In particular, the jury found that MGA had not proved a reason to combine the prior-art references with a reasonable expectation of success. The evidence is sufficient to support that finding. That conclusion, which is reinforced by sufficient evidence of objective indicia of nonobviousness, disposes of MGA's obviousness challenge here.

MGA presented little evidence on motivation to combine with a reasonable expectation of success. The only evidence that it has identified, beyond the prior-art documents' own content, is the testimony of its expert, Mr. Phillips. But Mr. Phillips did no more than cursorily identify the conceptual relatedness of Swift and the Laser Chess articles. J.A. 1889 ("Both [are] styles of presentation . . . they're teaching methods. They're ways to get into your mind a concept. And so they're equally valuable, in my view, for teaching you what game elements are. And that's why I think it's [] legitimate to combine these. . . ."). This testimony says nothing about why an ordinarily skilled artisan would have a reasonable expec-

tation of success in creating the claimed workable physical game, with real lasers and regularly moving and rotating game pieces, based on Swift, which involves pieces fixed during play, and two articles about a computer game involving mere graphical images of lasers. More fundamentally, the testimony gives little reason that a person of ordinary skill in the art—with Swift and the Laser Chess articles hanging somewhere on the figurative wall of pertinent art, as we previously held—would have defined a problem to be solved in such a way as to provide a motivation to pick out those references for combination.

The Supreme Court has confirmed that "any need or problem *known* in the field of endeavor at the time of invention and addressed by the patent *can* provide a reason for combining the elements in the manner claimed." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007) (emphases added). We have noted that "courts *may* find a motivation to combine prior art references in the nature of the problem to be solved." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (emphasis added) (internal quotation marks omitted). But those standards identify factual issues, and in resolving the issues, it generally matters what evidence is submitted in a given case about whether a need or problem actually was known in the field and would in fact have motivated an asserted combination. *See, e.g., Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347–48 (Fed. Cir. 2013); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1368–69 (Fed. Cir. 2012). In this case, the prior-art documents standing alone do not compel findings on motivation and expectation as a matter of law, and it was reasonable for the jury to find MGA's evidence on these topics to be insufficient.

That is so, in particular, when the full evidence is considered, including Innovention's evidence supporting rejection of MGA's obviousness contention. Its expert, Dr. Eimerl, testified to the absence of a motivation to combine

because a person having ordinary skill at the time of invention "[was] thinking about making board games like Monopoly and Stratego and Operation, [so] why would [he or she] pick out [Swift and the Laser Chess articles]?" J.A. 2117. He also noted that MGA's expert, far from identifying recognition at the time of invention of a problem whose solution would lead to Innovention's claimed invention, presented a hindsight analysis:

> [Mr. Phillips] started from the wrong approach. He started from saying, with the '242 patent and worked backwards. In other words, he said if I had the idea of inventing the '242 patent and I was given these or the features of something with the features of the Khet game, I already had that idea in mind and I was handed the prior art, that is the video game articles and Swift patent, and if I already had it in mind to be thinking about a laser game, then, he made an analysis based on whether or not they would, the person of ordinary skill in the art would make it from the prior art to that, to a laser game.

J.A. 2116–17; *see also KSR*, 550 U.S. at 421 ("A factfinder should be aware . . . of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."). Finally, Dr. Eimerl testified that a person of ordinary skill in the art would not have readily seen from the prior art, or known generally, how to solve the problems of making a workable real-laser, frequent-movement board game. J.A. 2104, 2117–27. His testimony tends to suggest no reasonable expectation of success.

The evidence in this case permitted a judgment of nonobviousness on the foregoing prior-art-focused bases. That evidence was supplemented, moreover, by substantial evidence supporting the jury's express findings of several objective indicia of nonobviousness, including commercial success of Innovention's product, which

embodied the claimed invention; praise from others in the field; and MGA's copying of Innovention's product. The district court summarized the evidence on those issues, including evidence permitting the jury to make credibility findings and to otherwise reject certain submitted testimony by MGA's Mr. Shapiro. J.A. 52–59. In light of all the evidence, the district court did not err in refusing to disturb the jury's verdict of nonobviousness.

B

MGA argues against the award of pre-issuance reasonable-royalty damages on the ground that the scope of the claims changed from the published application to the issued patent. "[T]o obtain a reasonable royalty" based on pre-issuance activities that would infringe if they took place post-issuance, "the invention as claimed in the patent [must be] substantially identical to the invention as claimed in the published patent application." 35 U.S.C. § 154(d)(2). "[C]laims are 'identical' to their original counterparts if they are 'without substantive change.'" *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (quoting *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 827–28 (Fed. Cir. 1984)) (interpreting "substantially identical" in the reissue context, 35 U.S.C. § 252). "[I]n determining whether substantive changes have been made, we must discern whether the *scope* of the claims are identical, not merely whether different words are used." *Id.* We review de novo the ultimate legal conclusion that claims are identical in scope, *id.*, and the parties have not suggested that there are any material underlying factual findings here, *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015).

MGA primarily argues against such so-called "provisional rights" damages on the ground that, because "no published [application] claim required movable key pieces while all of the [issued] patent claims do, the published

and issued claims as a matter of law differ in scope." Appellant's Brief at 60. We reject that argument. For example, claim 31 of the published application required players to take turns "to move playing pieces." J.A. 5026; *see also*, *e.g.*, J.A. 5026–27 (claim 39). The movability requirement in no way excludes "key" game pieces (playing pieces): claim 31 itself refers to the piece to be illuminated as "a key playing piece," J.A. 5026; and the written description makes express that (the to-be-illuminated) game piece **30** "is the key game piece" and describes "the moves that are available to a particular game piece **30** . . . ." J.A. 5021–22. We agree with the district court that the movability of key pieces was already present in the claims of the published application.

MGA argues in the alternative that some of the claims were subject to broadening amendments through a change of the transitional phrase "consisting of" to "comprising." *See*, *e.g.*, J.A. 5122 (claim 39). But those amendments do not stand in the way of pre-issuance damages in this case. At least some of the claims found to infringe here retain their original scope, and MGA has not contended that any of the infringing acts here infringed only the broadened claims. *See Aqua-Aerobic Sys., Inc. v. Richards of Rockford, Inc.*, 835 F.2d 871, at *1 (Fed. Cir. 1987) (unpublished) ("[T]he number of valid claims infringed here has no bearing on damages."). That is sufficient reason to reject MGA's contention. We need not further explore the effect of the transitional-language change in particular claims.

For those reasons, we conclude that the district court did not err in permitting pre-issuance damages.

## C

Finally, MGA challenges the determinations by the jury, J.A. 118, and district court, J.A. 37–63, that MGA was willful in its infringement. The applicable standards

are undisputed by the parties. It is enough here to note that willfulness is not established where the defendant has a substantial, objectively reasonable, though ultimately rejected, defense, including an obviousness defense. *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *see Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1382–83 (Fed. Cir. 2014). We review the conclusion on that aspect of the willfulness issue de novo, *Halo*, 769 F.3d at 1382, but here, regardless of the standard of review, we conclude that the district court erred in deeming MGA's obviousness defense objectively unreasonable.

The key error was in the court's discussion of the differences between the claims and prior art—a discussion that stressed how, at trial, MGA's expert witness initially relied on an incorrect claim construction of "game piece," had to be corrected as to the requirement that the phrase referred to a *physical* item that can be placed on a *physical* board, and then acknowledged that the Laser Chess articles did not disclose that element. J.A. 46–48. We may assume, from the district court's description and Innovention's presentation to us, that this process had a dramatic effect in the courtroom, undermining the expert's credibility. But the district court gave it a significance it does not have for assessing how large a gap there is between the prior art and Innovention's claims. Under any reasonable view, the gap between the prior art and Innovention's claims, while large enough to allow the jury to find that MGA did not successfully establish the required motivation to combine with a reasonable expectation of success, was not particularly large. Indeed, it was sufficiently small that MGA's defense was reasonable as a matter of law even considering evidence of objective indicia of obviousness.

Swift discloses or makes obvious most of the elements of the '242 patent. *Compare* '242 patent, col. 12, lines 39–

41, 49–50 (claim 31: "a game board," "movable playing pieces having at least one mirrored surface," "movable key playing pieces having no mirrored surface," and "a laser source"; claim 33: "recesses on the board to ensure reflection of the laser beam"), *with* Swift, col. 12, lines 37–38, 42–43, 45, 47, 49–50, 54–56, 60–61 and col. 13, lines 4, 7–8 (claim 1: "a playing area having a substantially orthogonal, substantially planar matrix," "means for projecting visually discernible paths," "means for angularly diverting said paths," and "a plurality of scoring modules . . . having means for detecting contact with said visually discernible path"; claim 2: "means for projecting is a laser and said visually discernible path is a laser beam"; claim 4: "means for angularly diverting said path is a mirror"; claim 7: "plurality of 'x'-shaped slots, . . . adaptable to fixedly and frictionally secure said means for diverting said path"). The Laser Chess articles also teach specific elements of the '242 patent's claims, though on a virtual platform. J.A. 5310 (disclosing a movable king piece with no reflective surfaces); *id.* ("In addition to their ability to move from square to square, pieces with reflective surfaces can also be rotated in place in 90-degree increments."); J.A. 5318 ("Partially mirrored stompers can be rotated in 45-degree increments . . . .").

Our earlier decision that the Laser Chess articles were pertinent art establishes that an ordinary artisan creating a physical board game would look to virtual games for various purposes, including for some game-step elements of Innovention's patent claims, even though computer games' "pieces" are not physical items to set on physical boards. That ruling, and the similarity of details just recited, do not resolve the obviousness issue, but they do demonstrate that the district court did not draw a reasonable conclusion about the magnitude of the advance over the prior art needed to arrive at the asserted claims. And once that error is corrected, MGA cannot be said to have "acted despite an objectively high likelihood that its

actions constituted infringement of a valid patent," *Seagate*, 497 F.3d at 1371—no matter how irresponsible it was in actually considering the scope or validity of patent rights that it knew (from December 2005) that Innovention was seeking and then knew (within about a month of issuance) that Innovention had obtained.

The willfulness determination is therefore reversed. It follows that the enhancement of damages must be reversed. It also follows that the district court's award of attorney's fees, which relied in part on the determination of willfulness, must be vacated. On remand, the district court should reconsider whether an award of attorney's fees is appropriate under § 285, reassessing the question without reliance on the now-reversed willfulness finding.

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and vacated and remanded in part.

No costs.

**AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART**